ETNA H. STIVERS *et al.* Appellees, *vs.* ORA L. STIVERS *et al.*—(P. J. HARSH, Appellant.)

*Opinion filed October 26, 1908.*

1. APPEALS AND ERRORS—*purchaser may appeal from order sustaining objections to confirmation of sale.* A purchaser at a partition sale who is heard upon his answer to the objections to the confirmation of the sale may appeal from the order sustaining the objections and granting a motion by the complainants in the partition proceeding to dismiss the bill.

2. JUDICIAL SALES—*chancellor's discretion as to approving sale is not arbitrary.* While the chancellor is vested with a broad discretion in reference to approving a sale of land by the master under a decree for partition, yet such discretion is not arbitrary but is subject to review.

3. SAME—*what does not affect interests of purchaser at partition sale.* If a partition sale is regularly conducted, the amount bid is a fair price and there is no improper conduct which will defeat the purchaser's right to a deed, the mere fact that one of the complainants, who is a minor, has, since the sale, purchased the interests of the other complainants and that it will be to his interest to retain the land, does not defeat the right of the purchaser to have the sale confirmed.

4. SAME—*when sale should be confirmed although price is less than bid at first sale.* The mere fact that the price realized at a second partition sale is less than the highest bid at the first sale is not ground for refusing to confirm the sale, where the bidder at the first sale was the complainants' solicitor, who failed to comply with his bid and ordered a second sale, which was not had until the market value of the land had decreased, owing to financial depression.

HAND, VICKERS and CARTER, JJ., dissenting.

APPEAL from the Circuit Court of Moultrie county; the Hon. W. G. COCHRAN, Judge, presiding.

On September 11, 1907, Etna H. Stivers, Mary V. Stivers, and Carl M. Stivers by Mary M. Stivers, his next friend, filed their bill in the circuit court of Moultrie county against Ora L. Stivers and others for partition of eighty-three acres of land in that county. The cause was referred

to a master, and thereafter, in accordance with his recommendations, on October 17, 1907, a decree for partition and appointing commissioners was entered by the court. The commissioners fixed the value of the land at $11,070, and reported that it was not susceptible of division without manifest prejudice to the parties in interest, and thereupon, on November 4, 1907, the court entered a decree of sale directing the master to sell said property at public sale, and the decree further directed that said master should execute and deliver to the purchaser or purchasers of said premises proper deeds of conveyance therefor upon the confirmation of the report of such sale.

On March 13, 1908, the master reported that in pursuance of the decree of November 4, 1907, after having duly advertised said land according to law and the requirements of said decree, he did, on March 7, 1908, sell the said land to P. J. Harsh at public sale for $7800, he being the highest and best bidder therefor, and that Harsh immediately complied with the terms of said sale.

The complainants and defendants joined in filing objections to the confirmation of the report, setting up that the selling price was grossly inadequate; that the purchaser interfered with the sale of said premises by preventing other persons from bidding; that the master did not distinctly announce the sale, and that some of the persons who were present, and who were intending to bid a greater amount than the sale was made for, misunderstood the character of the sale and thought the title to the land was defective, and that if the premises were re-sold they would bring at least $1500 more than what they sold for.

By leave of court Harsh filed an answer to the objections, denying the charges made therein and averring that he in no way attempted to or did prevent any competition; that he did not bargain with anyone with reference to said sale or in any way prevent anyone from bidding. He averred that this was the second sale of said premises within

the past ninety days, and that at the first sale thereof, which was held on December 7, 1907, R. M. Peadro, who is the solicitor for complainants in the partition proceeding, became a bidder himself and the premises were sold and struck off to Peadro for $10,085, but that he did not comply with the terms of said sale; that said Peadro ordered the master to again advertise the said land to be sold on March 7, 1908, and at said time at said sale there were several persons present who were large property owners and able to buy said premises; that the said Harsh became a bidder at said second sale and was the highest bidder, and that said land was sold and struck off to him after the said master had made an open and distinct announcement of the sale of said land; that said sale was open and fair in every respect, and that he (Harsh) complied with the terms of said sale and is entitled to a deed to said premises.

Thereafter, on March 24, 1908, Carl M. Stivers filed additional objections to the confirmation of the report and a petition seeking a dismissal of the bill for partition, setting out that he was a minor, and that the said premises, at the time of the filing of the bill, were owned by petitioner, Etna H. Stivers, Mary V. Stivers and Ora L. Stivers, as tenants in common; that J. E. Dazey, one of the defendants, had no interest in the premises except as mortgagee, and Emma Lee, another of the defendants, had no interest therein except as a judgment creditor, and that Dennis Landers, another of said defendants, had no interest except as a tenant under a lease which has since expired; that on March 19, 1908, petitioner became the sole owner of the said premises by virtue of deeds of conveyance from the said tenants in common; that he does not desire to part with the title to said land and that it is not for his best interest that the title should be taken from him. Petitioner asks that the court refuse to confirm the said sale and the report of the master made thereof, and that the court set aside the decree for partition, all of the reports of the mas-

ter and the report of the commissioners, and that the bill be dismissed without prejudice to the rights of J. E. Dazey and Emma Lee. On the same day the other complainants, by R. M. Peadro, their solicitor, filed their motion to dismiss the cause. Dazey and Emma Lee filed their consent to the dismissal of the suit.

Upon the hearing on the objections and the petition for dismissal, evidence was offered by the objectors and Harsh in open court, and on March 30, 1908, a decree was entered by the court sustaining said objections and setting aside all the orders and decrees theretofore entered in the cause. By that decree the cause was dismissed and the master ordered to return to Harsh all the money which he had paid and the note which he had executed in payment for the land. From that decree Harsh has prosecuted an appeal to this court.

It appears from the record that the land was first offered for sale on December 7, 1907, and at that sale it was struck off and sold to R. M. Peadro for the sum of $10,085, he being the highest bidder. Peadro apparently made no effort whatever to comply with the terms of that sale, and directed the master to re-advertise the land and sell it again on March 7, 1908, which the master did. It appears from the evidence taken upon the hearing on the objections to the confirmation of the sale, that some of the persons who attended the second sale believed that the land was being bid in by Peadro, acting through Harsh. At that hearing witnesses testified fixing the value of the land at various sums in excess of $7800. The sale was conducted in a proper manner by the master, and the only evidence tending to show that Harsh attempted to prevent competition appears from a conversation that he had with one Dennis Landers, who occupied the land as tenant during 1907. Landers and Harsh both testified that no agreement or understanding of any kind between them resulted. Landers was present at the second sale and made three bids on the

land, his last bid being $7775. He testified that he thought his bid was $8000, and that he would have bid that amount for the land had he not been mistaken as to the amount of his bid.

It is contended by Harsh that the court erred in not confirming the master's report of sale and in dismissing the bill.

E. J. MILLER, for appellant.

M. A. MATTOX, and J. B. TITUS, (A. W. LUX, guardian *ad litem,*) for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Appellant, the purchaser at the sale, was heard upon the objections to the confirmation of the report of the sale and was allowed an appeal. The contention of appellees that he could not rightfully appeal is without merit. The petition of Carl M. Stivers asking dismissal of the bill filed after the master's sale, upon the conveyance to him of the interests of the other tenants in common, did not affect the rights of the purchaser at the sale. The further discussion of the case may therefore be confined to the grounds upon which it was originally urged that the master's sale should not be confirmed. We find these, so far as now insisted upon, to be: (1) That the selling price as shown by the report is grossly inadequate; and (2) that the purchaser prevented other parties from bidding at the sale.

The property was sold for $7800. No money was brought into court with the objections to the confirmation of the master's report of sale, no guaranty of an advance was given, nor does the proof show that the premises would have sold for more had a re-sale been ordered. Several of the witnesses who testified on the part of those objecting to the confirmation of the report fixed the value of the land on the day of the sale at $8000 to $8300, which was but $200 to $500 above the price at which the land was sold. Others, however, stated the value to be some place

from $125 to $150 per acre. The sale was properly adver-
tised and fairly conducted. It was attended by several men
who were farmers owning land in the vicinity of this land
and who possessed the requisite financial ability to become
purchasers, none of whom saw fit to raise the bid upon
which the land was knocked off to the appellant. · It is true,
the land sold for less than it had been purchased for by
Mr. Peadro at the first sale, but it is entirely clear from
the testimony that the market value of the land was less at
the second sale than at the first on account of the financial
depression, which had continued during the interim and
which resulted from the panic which occurred in the autumn
of 1907. The inadequacy did not exceed $500, and this,
it is clear to us, resulted from the course pursued by Mr.
Peadro, who had defaulted after purchasing the land at
the first sale, and from a suspicion which seems to have
prevailed to some extent that Harsh was at the second sale
bidding for Mr. Peadro or acting in collusion with him, and
was, in fact, a by-bidder. This suspicion finds no support
in the proof and it does not appear that Harsh was in any
way responsible for its existence.

As regards the charge that the appellant interfered with
other prospective bidders or prevented them from bidding,
the evidence shows this: Shortly after Peadro defaulted,
Harsh suggested to Landers, who had been the principal
bidder against Peadro at the first sale, that he (Harsh)
thought if Landers would stay out he (Harsh) might pos-
sibly get the land for $10,000. Landers replied that he did
not want it for that. This was before the land was adver-
tised the second time, and Harsh says that at that time he
thought he could buy up the claims which were secured by
liens upon the interests of the adult tenants in common, and
in this way perhaps acquire the land so that he could sell
it to Landers for $10,000. The amount of these encum-
brances is such that they will more than consume the in-
terests originally owned by the adult tenants in common at

the price at which the land was sold, and would practically consume those interests if the land was sold for $10,000. These encumbrances, however, do not affect the interest originally owned by the minor. Nothing came of the suggestion made by Harsh to Landers, and later Harsh told Landers that nothing could be done about the matter as the land had been again advertised. After the second sale was advertised, Landers made an agreement with a neighbor by the name of Monroe to attend the sale and bid as high as $8000, if necessary, in order to get the land, and in the event of his purchasing it for $8000 or less, he was to take one-half and Monroe was to take the other half. Landers was the only bidder against Harsh, and when Harsh bid $7800 Landers quit bidding, and testifies that he quit under the impression that his last bid was $8000. It also appears that after the land had been knocked off to Harsh he offered to rent it to Landers, but the latter did not accept the offer. This proof entirely fails to establish any of the grounds upon which the objections to the sale were based. It is, of course, a misfortune that less has been realized from the land than the amount for which it was sold at the first sale, but upon this record we are driven to the conclusion that the necessity for the second sale was the result of the course pursued by Mr. Peadro, and if his acts were as they now appear to have been, the parties were not without remedy against him.

The sale was made in accordance with the law; it was properly advertised and regularly conducted; the price realized, considering all the evidence, was not grossly inadequate; the purchaser was not guilty of any improper conduct. To set aside a sale under such circumstances is calculated to discourage bidding at, and to destroy the faith of the business world in, judicial sales. In *Kiebel* v. *Leick,* 216 Ill. 474, it was said: "On an application to vacate a judicial sale the court should also take into consideration the fact, if shown, that the parties interested are under dis-

abilities. Adults are able to bid for themselves or, have others do so, and thus protect their rights and obtain the full value of their interests in premises sold; but not so as to infants. They are by their disability prevented from protecting themselves against loss. Courts of equity are the guardians of all infants within their jurisdiction, whose rights are under their special protection; hence a sale of real estate should be set aside where the interests of infants are involved, if the court can see that to refuse to do so will result in substantial and irreparable loss to them. In other words, the policy of the law to give permanency to judicial sales should not be enforced contrary to the rights of infants or others under disability." To the same effect are *Jennings* v. *Dunphy,* 174 Ill. 86, *Compton* v. *McCaffree,* 220 id. 137, and *Abbott* v. *Beebe,* 226 id. 417. Confirmation of the sale of a minor's realty will not be refused, however, upon the motion of those representing the minor, on the ground, alone, that the price was inadequate, unless it is clearly made to appear to the chancellor that a re-sale will realize for the minor a sum substantially larger than that resulting from the sale attacked. No such showing is made here. No offer to bid more appears, no witness testifies that more would be offered at another sale, and such inadequacy as is shown by the proof is not sufficient to clearly establish the fact that the land would have sold for a substantial advance at a third sale. While the chancellor is vested with a broad discretion in reference to approving sales of this character, his discretion is not arbitrary but is subject to review, and the following authorities warrant the conclusion that in the exercise of that discretion the chancellor should have confirmed this sale: *Ayres* v. *Baumgarten,* 15 Ill. 444; *Barling* v. *Peters,* 134 id. 606; *Connely* v. *Rue,* 148 id. 207; *Quigley* v. *Breckenridge,* 180 id. 627; *Quick* v. *Collins,* 197 id. 391.

The decree appealed from will be reversed and the cause will be remanded to the circuit court, with directions to en-

ter a decree confirming the report of the sale to Harsh, and the master will then convey the property to him. The fees of the guardian *ad litem* in this court will be taxed at $50, and all of the costs of this court will be adjudged against the appellees.

*Reversed and remanded, with directions.*

Mr. Justice Hand, dissenting:

I do not concur in the conclusion reached in the majority opinion filed in this case. The complaining party is a minor. The land was appraised at $11,070, and it had sold at a former master's sale, in the same proceeding, for $10,085, and the sale directed to be approved by the majority opinion was for $7800, only $420 more than two-thirds of the appraised value of the land; and the chancellor who set aside the sale in the court below and ordered a re-sale was more familiar with the situation, from his knowledge of the case, than this court could possibly be from reading the record filed in this court. We have repeatedly held, in cases like this, that great weight should be given to the view of the chancellor, and that when the interest of a minor is involved the court should guard such interest with great care. (*Kiebel* v. *Leick,* 216 Ill. 474; *Compton* v. *McCaffree,* 220 id. 137.) Had the bid in question been $420 less than it was, even though the parties were adults, the master would have been powerless to make the sale or the court to approve the sale if made, as it would have been for a sum less than two-thirds of the amount at which the land was appraised; and in the case of a minor it would seem clear it was not error to set aside a sale of the minor's real estate for $7800 where the land had been appraised by sworn appraisers at $11,070, and sold for $3270 less than its value was fixed by the appraisers and $2285 less than the price at which it sold at a sale a short time before in the same proceeding.

In the case of a sale of a minor's real estate, a sale may be set aside and a re-sale ordered by the chancellor upon his own motion and without security that the premises at a subsequent sale will bring more than at the sale sought to be set aside; (*Jennings* v. *Dunphy*, 174 Ill. 86; *McCallum* v. *Title and Trust Co.* 203 id. 142; *Compton* v. *McCaffree, supra; Abbott* v. *Beebe*, 226 Ill. 417;) and the misconduct of the solicitor representing the adult parties in interest ought not to bar the chancellor from protecting the rights of the minor in the subject matter of the sale and the minor be required to surrender his interest in the land and look to an uncertain remedy against such solicitor.

Mr. Justice Vickers:  I concur in the dissenting opinion of Mr. Justice Hand.  I think the decree setting aside the sale should be affirmed.

Mr. Justice Carter:  I agree with the views expressed in the dissenting opinion of Mr. Justice Hand. ·