(No. 20823.—

R. G. CLEGG, Plaintiff in Error, *vs.* PETER B. CHRISTENSEN *et al.* Defendants in Error.

*Opinion filed December 17, 1931.*

QUINN, QUINN & O'HERN, (E. T. ANTHONY, and JAY J. ALLOY, of counsel,) for plaintiff in error.

FORT & FORT, for defendant in error Charles E. Morgan, trustee; JOSEF T. SKINNER, guardian *ad litem*, and J. L. SPAULDING, for other defendants in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, R. G. Clegg, was the successful bidder at a trustee's sale of real estate. An order was entered by the circuit court of Bureau county sustaining objections filed by defendants in error to the trustee's report of sale and ordering that the property be re-sold. To reverse that order plaintiff in error has sued out a writ of error from this court.

Barthol Peterson died in 1910 leaving a will, which was admitted to probate, by which he devised the land in ques-

tion in this case, being about 166 acres of land in Bureau county, to his wife for her life, and directed that within one year after her death the land be sold and the proceeds used to pay a legacy of $300 to Charles E. Morgan and two other legacies of $500 each, and that the balance be distributed equally among nine nieces and nephews of the testator. The will nominated Christina Peterson, the testator's wife, as executrix, and upon her death Charles R. Danforth as executor of the will. The widow was appointed and acted as executrix. Danforth died during her lifetime. The testator's widow died August 19, 1929. On January 3, 1930, Morgan filed a bill in the circuit court of Bureau county setting up the above stated facts and asking that a trustee be appointed to sell the real estate and distribute the proceeds of the sale in accordance with the provisions of the will. All persons interested in the proceeds of the sale of the real estate under the provisions of the will were made parties defendant. Defendant in error Peter B. Christensen appeared by his solicitor and a guardian *ad litem* was appointed for defendants in error Ronald Barthol Peterson, Lawrence Merrill Peterson and Helen Jane Peterson, minor children of a deceased nephew of the testator. The other defendants were defaulted. After a hearing on the bill, the court on April 22, 1930, entered a decree in accordance with the prayer of the bill, by which Morgan was appointed as trustee and directed to sell the land at public auction at the front door of the post-office in the village of Walnut, in said county, on some day prior to August 19, 1930, to be selected by the trustee. The decree provided that the sale should be advertised by publishing and posting notices thereof, and that the terms of sale should be that the purchaser pay ten per cent of the purchase price on the day of sale and the balance on March 1, 1931. The trustee fixed 2:00 o'clock in the afternoon of July 17, 1930, as the time for the sale, advertised it for that time and employed an auctioneer, who held the sale

at that time. Plaintiff in error's bid of $51 an acre, or a total of $8460, for the land was the highest bid and the land was declared sold to him. He deposited $846 with the trustee. The trustee's report of sale was filed August 2, 1930. Exceptions to the report were filed by Peter B. Christensen and by the above named minors by their guardian *ad litem*. The exceptions were, (1) that the amount of the bid of plaintiff in error was grossly inadequate; (2) that plaintiff in error did not bid on the land for himself but for the trustee; (3) that the sale was held at an inopportune time and should have been held in the latter part of August or in September; (4) that the land would have sold for more money if the sale had been held on the premises; and (5) that divers persons were willing to bid more for the land in case of another sale. Answers to the exceptions were filed by plaintiff in error and by the trustee. These answers were stricken on motion. At the hearing on the exceptions Frank G. Hewitt made an advance bid, in case of a re-sale of the land, of $9600 and tendered a bank draft for $960 to the trustee. Plaintiff in error deposited with the clerk $126 in currency for payment to the three minors interested in the proceeds of the sale of the realty, that sum being one-ninth of the excess of the advance bid over the sale price. After the hearing the court entered an order sustaining the exceptions to the report of sale and ordered a re-sale of the property by the trustee in accordance with the provisions of the decree of April 22, 1930. The court found that the fair cash market value of the land was not less than $75 an acre; that there were four bidders at the sale, all but one of whom ceased bidding before they had offered as much as they otherwise would have offered for the land because from appearances at the sale they concluded that there was by-bidding, and that there was a reasonable doubt as to whether plaintiff in error bid on the land in his own behalf or in behalf of the trustee.

The evidence shows that the fair cash market value of this land is about $75 an acre, or $12,000, the latter figure being the one stated in the brief filed in this court by defendants in error. It further shows that the sale was well advertised in accordance with the decree of the court; that the weather was good on the day of the sale and that forty or fifty people attended; that the sale started at 2:00 o'clock and was not over until about 3:30 o'clock; that the land was offered in separate tracts and as a whole; that the auctioneer offered to put it up for sale in any division of tracts that any prospective bidder might suggest; that there were a number of bids for the property as a whole, the first bid being $40 an acre; that considerable time elapsed between the bid of plaintiff in error and the close of the sale, during which the auctioneer tried to get higher bids, and that Frank G. Hewitt, who made the advance bid in case of a re-sale, attended the sale and bid on the land. On the day of the sale, the trustee, his attorney, plaintiff in error and the auctioneer, none of whom resided in the village of Walnut, went to Walnut together in the attorney's automobile. The trustee, the attorney and the auctioneer went out to see the land, which was located near the edge of the village, but plaintiff in error did not go out to see the land but visited with Hewitt until the time of the sale.

James P. Stephens, a witness for defendants in error, testified in substance as follows: He attended the sale and made bids on the land for three different persons. One of these was Dr. Shearburn, who had given him authority to bid as high as $70 an acre. The last bid for Dr. Shearburn was $49 an acre on the whole of the land. Witness bid $50.50 an acre for Alonzo Miller, and then plaintiff in error bid $51 an acre. Witness got the impression that "some of the heirs were not going to let the land sell unless it brought a certain price," and did not bid any more.

Alonzo Miller testified as follows: He attended the sale. He had Stephens bid $50.50 an acre for the land for him,

and immediately plaintiff in error, who had come to the sale with the trustee, bid $51 an acre, and that "made me sore and I shut up." He concluded there was by-bidding. No one tried to keep him from bidding. The auctioneer tried to get higher bids.

Frank G. Hewitt, as a witness for defendants in error, testified as follows: Plaintiff in error visited with him before the sale and told him that he (plaintiff in error) did not think he would bid on the land. Witness started the bidding at the sale at $40 an acre and made one other bid thereafter. He quit bidding because he saw plaintiff in error bid and thought that the farm had to bring more than he wanted to pay for it.

Other evidence for defendants in error was to the effect that the best time to sell farm land is in the latter part of August or in September, when the farmers are not busy, and that it is customary to hold sales of land on the premises sold.

Defendant in error Peter B. Christensen testified that before the sale he asked the trustee if there would be some way to prevent a sale in case the bids were unreasonably low, and that the trustee replied that a re-sale would entail quite an expense in addition to that already incurred. Plaintiff in error and the trustee both testified that the trustee had no interest whatever in the bid for the land made by plaintiff in error and there was no agreement between them about bids to be made at the sale.

Public policy requires stability in judicial sales and that they should not be disturbed for slight causes, otherwise property could not be expected to bring its full value at such sales. (*Crist* v. *McCoy,* 287 Ill. 641; *Abbott* v. *Beebe,* 226 id. 417; *Conover* v. *Musgrave,* 68 id. 58.) Where the interests of minors or incompetents are not involved, mere inadequacy of price, in the absence of irregularities or circumstances indicating fraud or unfairness in the conduct of the sale, is not ground to set aside the sale,

320

and the discretion of the chancellor in approving or disapproving a sale, while broad, is not an arbitrary discretion but must be exercised in accordance with established principles of law. (*Stivers* v. *Stivers*, 236 Ill. 160; *Quigley* v. *Breckenridge*, 180 id. 627.) Where, however, the sale price is grossly inadequate, even slight circumstances indicating fraud or unfairness, either upon the part of the officer, the purchaser or the party to the record benefited by the sale, will furnish ground to avoid the sale. *Barnes* v. *Freed*, 342 Ill. 73; *Logar* v. *O'Brien*, 339 id. 628.

The bid of plaintiff in error for the land in question is not so grossly inadequate as to furnish evidence of fraud. The bid is more than two-thirds of the fair value of the land as fixed by defendants in error. The evidence is insufficient to support even a suspicion that plaintiff in error made the successful bid for the trustee rather than on his own behalf, or that the trustee was personally interested in any bid made at the sale, or that there was any fraud in the conduct of the sale. There is evidence that the best time to sell farm land is in the latter part of August or in September and the customary place to sell it is on the premises, but under the provisions of the will this land had to be sold before August 19, 1930, and the place of sale was fixed by the chancellor, and defendants in error, so far as the record shows, offered no objection or exception to the decree fixing the place and terms of sale. Furthermore, the re-sale was ordered to be held in the same place by the order which defendants in error ask to have affirmed. The only evidence furnishing any ground for a disapproval of the trustee's report of sale, so far as the adults are concerned, was that some of the bidders at the sale did not bid as much as they otherwise would have, because they got the impression that there was by-bidding. There was no effort to keep anyone from bidding at the sale. Any impression that bidders got that there was by-bidding at the sale was not consciously made by plaintiff

in error, the trustee, the auctioneer or any person interested in the proceeds of the sale, and the reasons given by the unsuccessful bidders as to why they did not bid more than they did for the land at the sale are not such as have any strong appeal to the intelligence. So far as defendants in error other than the minors are concerned, the record shows no good reason for disapproval of the sale.

The fact that there was an advance bid made for the land in case of re-sale and that that bid was for a substantial amount more than the bid of plaintiff in error furnished ground for ordering a re-sale so far as the minors are concerned. (*Jennings* v. *Dunphy,* 174 Ill. 86; *Kiebel* v. *Leick,* 216 id. 474.) But in this case, as in *Abbott* v. *Beebe, supra,* the successful bidder, before the court had set aside the sale, deposited in court the additional amount that the minors would be entitled to in case of a re-sale at the amount of the advance bid. The amount deposited was $126. Plaintiff in error's bid was $8460. Specific legacies payable from that sum amount to $1300. Of the balance the minors are entitled to one-ninth, or $795.55. Out of the proceeds of a sale for $9600 the minors would be entitled to $922.25. The difference in the amount that the minors would get is $126.70. These figures are made without allowing anything for the expenses of the sale and the court costs and without taking into consideration the expense that would be incurred by another sale. We do not think that there is any basis for a conclusion that the land would sell for more than the amount of the advance bid in case of re-sale, and we believe that the interests of the minors will be protected by the payment to them of the additional amount deposited for them by plaintiff in error.

The decree of the circuit court is reversed and the cause remanded for further proceedings in accordance with the views herein expressed. *Reversed and remanded.*