(No. 21804.— )

THE FARMERS AND MECHANICS BANK, EXr. *et al.* Appellees, *vs.* WILLIAM S. GRIFFITH *et al.*—(ARTHUR K. HARDY, Appellant.)

*Opinion filed April 22, 1933.*

G. B. HARDY, and E. D. HARDY, for appellant.

WOOLSEY, STICKNEY & LUCAS, WILSON & SCHMIEDESKAMP, and S. M. MEADOWS, for appellees.

324

Mr. Chief Justice Heard delivered the opinion of the court:

The Farmers and Mechanics Bank, executor of the last will and testament of Emeline A. Snapp, deceased, petitioned the county court of Knox county for an order directing it to sell real estate to pay debts and legacies, and a decree was entered ordering such sale. After due notice a house and lot located in Galesburg and a farm in Warren county were offered for sale in accordance with the decree. The executor's report of sale showed that Arthur K. Hardy's bid of $6300 for the farm lands was the highest; that subsequently an offer to pay at least the sum of $7500, or three dollars more per acre, had been received by the executor; that a guaranty was given it to insure the bidding of at least that sum upon a re-sale, and that the sum of $6300 was not a fair and reasonable price for the real estate. Objections were filed to the report by Hardy, who claimed that the sale to him for the farm lands should be approved. Additional objections were also filed by the Chaddock Boys School and by the Wesley Foundation of the University of Illinois, which were interested in the proceeds of the sale of the real estate. The court heard evidence upon the report of sale and the objections thereto and entered an order approving the sale of the city property and ordering a re-sale of the farm property, from which order Hardy has appealed to this court.

The evidence upon the hearing showed that by the will of the deceased, Emeline A. Snapp, the management and control of the farm lands were devised to the First National Bank of Galesburg in trust, with directions to sell and convey the same within ten years after the testatrix's death, and to pay over the proceeds of such sale one-half to the Wesley Foundation of the University of Illinois and one-half to the Chaddock Boys School of Quincy, Illinois. By a codicil to the will the Farmers and Mechanics Bank of Galesburg was nominated as trustee in place of the First

National Bank. The Wesley Foundation is a corporation not for profit and is an effort of the Methodist church to look after the social and religious interests of students at the University of Illinois. Its principal activities are religious instruction, social events for the young people, forums, and cultivation of friendship with international students. The Chaddock Boys School, located at Quincy, is a corporation not for profit and is also connected with the Methodist church. It is a home for homeless boys without means, taking them from about the age of five years through the eighth grade and occasionally through high school. They are both organized solely for charitable purposes. The court in its decree found that the fair cash market value of the farm on the date of the sale was $10,000, that Hardy's bid was less than two-thirds of its value, and that the approval of the sale to him would result in a substantial loss to the two charitable institutions.

*Clegg* v. *Christensen,* 346 Ill. 314, *Stivers* v. *Stivers,* 236 id. 160, and other cases, are cited by appellant to the effect that where the interests of minors or incompetents are not involved, mere inadequacy of price, in the absence of irregularities or circumstances indicating fraud or unfairness in the conduct of a sale, is not ground for setting aside the sale. Upon an examination of the cases cited we find that while a general rule is laid down, the cases were decided not by reason of such rule, alone, but were decided upon the particular facts of each case, and that where the price was grossly inadequate, even slight circumstances were seized upon by the court upon which to base a refusal of a confirmation of the sale in the interest of justice; and that this was especially true in cases where real estate was being sold by decree of the county or probate court, against the will of the title holders, for the purpose of paying decedents' debts. In some of the cases cited the proposed new bidder had posted only a small percentage of the proposed bid, while in the instant case the proposed bidder had de-

posited with the executor sufficient cash and collateral to cover his bid of at least $7500, and in addition thereto had given his personal guaranty to make such bid. The evidence showed that the proposed bidder was a man of property and that his personal guaranty was good, irrespective of the cash and collateral. While in this case no minors or incompetents were parties, yet the interests of minors and incompetents were directly involved. The gifts to the Chaddock Boys School and to the Wesley Foundation were gifts to charity. A charity, in a legal sense, may be defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise bearing the burdens of government. It is immaterial whether the purpose is called charitable in the gift, if it is so described as to show that it is charitable in its nature. It is the fixed policy of the law to uphold charitable bequests, and our courts incline strongly in favor of charitable gifts and take special care to enforce them. (*Summers* v. *Chicago Title and Trust Co.* 335 Ill. 564; *Morgan* v. *National Trust Bank,* 331 id. 182; *Skinner* v. *Northern Trust Co.* 288 id. 229; *Crerar* v. *Williams,* 145 id. 625.) The public has a direct interest in the education and rearing of the indigent children of the State, and such interest would be prejudiced by a confirmation of Hardy's bid.

Section 109 of the Administration act, which provides for the manner of making executors' sales for the payment of decedents' debts, among other things provides with reference to the reports of such sales, that "any person interested in the premises sold, and any creditor of the estate, may file exceptions to such report, and upon the hearing thereof, the court may approve such report and confirm the

sale, or disapprove the same and order the premises to be re-sold." The highest bidder whose bid has been reported to the court as the best offer acquires no interest in 'or right to the land and is a mere offerer to purchase. Confirmation is final consent, and the court, being in fact the vendor, may consent or not, in its discretion. (*Miller* v. *Miller,* 332 Ill. 177; *Hart* v. *Burch,* 130 id. 426.) The discretion exercised by the court in approving or disapproving the sale, unless abused, will not be disturbed by a court. *Anderson* v. *Anderson,* 338 Ill. 309; *Warden* v. *Rayburn,* 313 id. 495; *Compton* v. *McCaffree,* 220 id. 137.

From a consideration of the evidence in this case we are of the opinion that the county court properly exercised its discretion in disapproving the report and ordering a re-sale of the farm lands.

The order of the county court is affirmed.

*Order affirmed.*