FIFTH DIVISION
November 13, 2009

No. 1-09-0312

| | | |
|---|---|---|
| DAMON D. PERRY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | 07 P 2612 |
| | ) | |
| THE ESTATE OF IRENE CARPENTER | ) | The Honorable |
| A Disabled Person | ) | Mary Ellen Coghlan, |
| | ) | Judge Presiding. |
| Defendant-Appellee. | ) | |

PRESIDING JUSTICE TOOMIN delivered the opinion of the court:

In this appeal, we consider whether a contract for the sale of a disabled person's home was properly set aside by the circuit court based upon equitable considerations. In the proceedings below, Damon D. Perry's contract to purchase a house from the disabled person's estate was initially approved by the probate court, but was later unilaterally voided by the guardian *ad litem* of the estate in reliance upon the mortgage contingency provisions. During a hearing on Perry's emergency motion to compel performance, the court ruled that the contract was null and void. On appeal, Perry seeks specific performance of the contract or, in the alternative, monetary damages. For the following reasons, we affirm.

BACKGROUND

On November 18, 2008, Rosa Neal, guardian for the estate of Irene Carpenter, entered into a contract to sell Carpenter's home to Damon D. Perry, whom Neal had known for a number of years. In turn, Perry, appeared before the probate court on December 9, 2008, to submit the contract for approval. At that time, Arlene Coleman, as the guardian *ad litem* of the estate, objected to the purchase price of $80,000, asserting that it was excessively low considering the value of the house. Notwithstanding Ms. Coleman's objection, following the presentation of evidence, the court entered an order approving the terms of the agreement.

The subject contract was conditioned upon a standard mortgage contingency provision set forth in paragraph 4, section (b):

"(1) If the Buyer is unable to obtain the Required Commitment by the First Commitment Date, Buyer shall so notify the seller in writing on or before that Date. Seller may within 30 business days after the First Commitment Date ('Second Commitment Date'), secure the Required Commitment for Buyer upon the same terms ***.

(2) If Buyer notifies Seller on or before the First Commitment Date that Buyer has been unable to obtain the Required Commitment, and neither Buyer nor Seller secures the Required Commitment on or before the Second Commitment Date, this Contract shall be null and void and the Earnest Money shall be returned to Buyer.

(3) If Buyer does not provide any notice to Seller by the First Commitment Date, Buyer shall be deemed to have waived this contingency and this Contract shall remain in

full force and effect."

The first written commitment date for satisfaction of the mortgage contingency was January 15, 2009.

The earnest money provision in paragraph 3 of the contract recited that the initial earnest money was $500 paid in the form of a check. The paragraph also provided for an increase in the earnest money deposit to 10% of the purchase price. However, no date or year was specified; instead, a line was drawn through both spaces.

Perry recorded the contract at the office of the Cook County recorder of deeds. Shortly after the contract was approved but before closing, Perry showed the property to another real estate agent with the intention of assigning his contract to a prospective buyer or selling the property after he completed the purchase. The price offered by the prospective buyer was $139,000. However, after the showing Perry proceeded to purchase the house for himself, arranging for property inspections and continuing negotiations with Ms. Coleman, the attorney for the estate.

On the day before the mortgage contingency deadline, Perry telephoned Coleman and requested an extension to comply with the terms of that provision. Coleman refused to grant any extension, stating a more attractive offer for the house had been received. On January 15, 2009, the mortgage contingency deadline, Perry once more asked Coleman for an extension and again was refused. Later that same day, Perry faxed her a letter, affirmatively stating he was waiving the mortgage contingency provision of the contract, that he planned to proceed with the transaction and the purchase agreement would remain in full force and effect. Notwithstanding

the notice, in a telephone conversation the following day, Coleman informed Perry that the contract was null and void due to his inability to provide a mortgage commitment.

In response, on January 23, 2009, Perry filed an emergency motion with the probate court to enforce the contract and to bar Coleman from engaging in further conduct designed to obstruct Perry from closing on the purchase. At the hearing, the court appointed an emergency guardian *ad litem*, Gregg Garofalo, to provide assistance to the court as an expert in real estate contracts. In turn, Garofalo informed the court that it was unlikely the mortgage contingency clause granted Coleman the authority to void the contract. However, Garofalo further advised that the earnest money provision could potentially provide the court with a basis to nullify the agreement because the deposit was never increased to 10 % of the purchase price. Ultimately, the court ruled that the contract was null and void due to the mortgage contingency provision, and, moreover, because of equitable considerations the contract was not in the best interests of the estate. Upon denial of Perry's motion, this appeal followed.

## ANALYSIS

Damon Perry, as interested third party, asserts that the probate court erred in denying his emergency motion to enforce his real estate contract with the estate of Irene Carpenter and declaring the contract null and void. Initially, we must determine the appropriate standard of review to be applied to the issues before us. Perry argues that the *de novo* standard is appropriate. Alternatively, the estate maintains that the manifest weight of the evidence standard applies.

Our reference to the Probate Act of 1975 (755 ILCS 5/1-1 *et seq*. (West 2008)) does not

reflect a clear statement of the standard of review to be applied to probate court orders generally.

Although *de novo* review would be proper if we were interpreting the Probate Act, here we are

not presented with a matter of statutory interpretation. See *In re Estate of Savio*, 388 Ill. App. 3d

242, 246, 902 N.E.2d 1113, 1118 (2009). While issues concerning the construction,

interpretation, or legal effect of contracts are subject to *de novo* review, it has long been

recognized that decisions rooted on equitable grounds should only be disturbed when there is a

clear abuse of discretion in the judgment rendered by the lower court. *Levy v. Broadway-Carmen*

*Building Corp.*, 366 Ill. 279, 289, 8 N.E.2d, 671, 676 (1937). Where a party seeks confirmation

of an offer to purchase the assets of an estate, the court, as *de facto* vendor, may enter or withhold

consent, in its discretion. *Farmers' & Merchants' Bank v. Griffith*, 352 Ill. 323, 327, 185 N.E.2d

854, 856 (1933). A decision reviewed under the abuse of discretion standard may be reversed

"only when no reasonable person could adopt the view taken by the lower court." *John Crane,*

*Inc. v. Admiral Insurance Co.*, 391 Ill. App. 3d 693, 700, 910 N.E.2d 1168, 1176 (2009), citing

*In re Marriage of Getautas*, 189 Ill. App. 3d 148, 153, 544 N.E.2d 1284, 1286 (1989).

Accordingly, we will review the decision in the case *sub judice* under that standard.

Perry asserts that the real estate contract between himself and the estate should not have

been declared void pursuant to either the mortgage contingency clause or the earnest money

provision. Perry maintains that according to the plain language of the contingency clause, his

communications with Ms. Coleman left no doubt that he had waived the contingency and the

contract therefore continued to have full force and effect. He further argues that his waiver was

evidenced by the letter forwarded to Coleman the day of the contingency deadline confirming his

1-09-0312

position.

In response, the estate submits that the mortgage contingency clause was not waived and that the contract was breached by Perry's failure to obtain financing. Additionally, the estate argues that even assuming the mortgage contingency clause did not void the contract, Perry's noncompliance with the earnest money provision likewise served to nulify the agreement. Moreover, the estate contends that regardless of the legal construction of the contract, the probate court's overriding duty to serve the best interests of a disabled person mandated that Perry's contract be voided and the estate be allowed to proceed with the more advantageous sale to the other party.

It is well settled that a mortgage contingency clause is considered to be a condition precedent and "[w]here a contract contains a condition precedent, the contract is neither enforceable nor effective until the condition is performed or the contingency occurs." *Jones v. Seiwert*, 164 Ill. App. 3d 954, 958, 518 N.E.2d 394, 397 (1987), citing *Dodson v. Nink*, 72 Ill. App. 3d 59, 64, 390 N.E.2d 546, 549 (1979). Our experience instructs that most standard mortgage contingency clauses are self-executing. The typical provision contains language requiring the seller to be notified in writing if a mortgage cannot be obtained. The notification serves to inform the seller that the buyer's performance is excused and the contract void. In the absence of such notice, the purchaser will be faced with a noncontingent contract. That result did obtain in *Thakral v. Mattran*, 156 Ill. App. 3d 849, 854, 509 N.E.2d 772, 775 (1987), where the court determined that a contract containing a mortgage contingency clause remained in full force and effect absent any loan contingencies if the seller was not provided notice of the buyer's

failure to obtain financing. This interpretation suggests that lack of notification does not void the contract; rather, it waives the condition precedent.

Prevailing authority also supports the notion that "a party to a contract may waive performance of a condition precedent *** where the condition precedent is intended for the benefit of the waiving party." *Catholic Charities of the Archdiocese of Chicago v. Thorpe*, 318 Ill. App. 3d 304, 309, 741 N.E.2d 651, 654 (2000), citing *Quake Construction, Inc. v. American Airlines, Inc.*, 181 Ill. App. 3d 908, 915, 537 N.E.2d 863, 868 (1989). Support for Perry's position that mortgage contingency clauses are interpreted to be for the benefit of the purchaser is found in *Barnes v. Brown*, 193 Ill. App. 3d 604, 607-08, 550 N.E.2d 34, 36 (1990) (the clause protects the purchaser from a requirement to purchase property without sufficient financing). In *Rogers v. Balsley*, 240 Ill. App. 3d 1005, 1011, 608 N.E.2d 1288, 1292 (1993), the buyers were required to inform the sellers in writing of the problems encountered in obtaining financing and their subsequent inability to continue with performance of the contract. Instead of providing written notification, the buyers informed the sellers orally and mailed a copy of a letter describing the situation to the seller's lawyer. *Rogers*, 240 Ill. App. 3d at 1007, 608 N.E.2d at 1289. We interpreted that notice as being sufficient to prevent the buyers from being forced to proceed with the sale without the benefit of financing. *Rogers*, 240 Ill. App. 3d at 1011, 608 N.E.2d at 1292 ("[s]ince plaintiffs received notice, in writing, prior to the expiration of the specified time, the object of the notice provision was accomplished").

As in *Rogers*, the mortgage contingency clause in Perry's contract contained language requiring notice to be provided informing the seller that financing had not been obtained and

therefore the contract was void. However, here the contract contained no requirement to provide notice, and such action would merely waive the mortgage contingency, but the contract would remain in full force and effect. Nonetheless, Perry went further, informing the estate of his ability and desire to consummate the purchase as a cash deal. As noted, he first told the estate's representative that he could close without a mortgage, and then followed up by sending a letter detailing his ability to pay and specifically his intent to waive the clause. The estate thus had explicit notice of Perry's desire to proceed without the benefit of financing, thereby waiving the mortgage contingency clause.

Perry's position is clearly in harmony with the holding in *Djomilja v. Urban*, 107 Ill. App. 3d 960, 964, 438 N.E.2d 558, 561 (1982), where the sellers likewise argued that the buyers breached the contract by failing to comply with the mortgage contingency clause. Although the estate attempts to distinguish *Djomlija* from the case *sub judice*, we find such efforts unavailing. The contingency clause in *Djomlija* is substantially similar to the provision in the matter before us. The distinction posited by the estate that the *Djomlija* contract contains the words "conclusively presumed" as opposed to the Perry language of "shall be deemed to have waived" is of no legal significance. "[C]ontract terms must be given their plain, ordinary, popular and natural meaning." *Village of Glenview v. Northfield Woods Water & Utility Co.*, 216 Ill. App. 3d 40, 48, 576 N.E.2d 238, 244 (1991). Applying the same principle to the Perry contract yields the unmistakable conclusion that the mortgage contingency clause was waived and the contract retained its vitality. Perry at no time notified the estate that because he was unable to obtain financing the contract would be void. To the contrary, Perry's letter of January 15, 2009,

unequivocally informed the estate that he was able to consummate the purchase and that the provision was therefore waived.

We also consider the estate's contention that Perry's request for an extension of the time to satisfy the mortgage contingency clause provided an alternative ground to void the contract. However, we find this argument to be meritless. Because modifications are allowed as a matter right, a request to exercise a right available to a contracting party under the law cannot be construed as conduct that voids the contract. *Schwinder v. Austin Bank of Chicago*, 348 Ill. App. 3d 461, 468, 809 N.E.2d 180, 189 (2004).

The estate further maintains that Perry's failure to satisfy the earnest money provision of Paragraph 3 provides an additional basis for voiding the contract. However, as a threshold matter, we note that the estate has offered no statutory or decisional law to support that contention. Supreme Court Rule 341(h)(7), which sets forth the requirements for appellate briefs, provides that arguments must include citation to the authorities relied upon. 210 Ill. 2d R. 341(h)(7). It is well settled that where a party fails to adhere to this requirement, the argument is forfeited on appeal. *Grimes v. Saikley*, 388 Ill. App. 3d 802, 811, 904 N.E.2d 183, 190 (2009). Here, the estate has failed to provide any authority to support its claim that Perry's failure to satisfy the earnest money provision served to invalidate the contract. Therefore, we could well deem the argument forfeited.

Yet, forfeiture considerations aside, there are more compelling reasons to reject the estate's argument that Perry's failure to increase the earnest money could serve as an alternative basis for setting aside the agreement. As Perry observes, the time and date for performance of

that condition to occur is stricken. The handwritten cross-out of the date in the provision could well manifest the parties' intent to divest Perry of any obligation to increase the earnest money. It is axiomatic that parties to an existing contract may modify the agreement by mutual assent. *Schwinder*, 348 Ill. App. 3d at 468, 809 N.E.2d at 189. The *Djomlija* court's observation is instructive: "Generally, where there is conflict in a contract between handwritten and typed or printed terms, the handwritten terms will be deemed controlling." *Djomlija*, 107 Ill. App. 3d at 964, 438 N.E.2d at 561, citing *Berman Leasing Co. v. Chicago Terminal Clearance, Inc.*, 88 Ill. App. 2d 43, 46, 232 N.E.2d 180, 182 (1967). Here, the fact that the provision was stricken by a handwritten notation impacts our consideration. Perry's failure to increase the payment cannot be construed as a breach of that provision absent any express language mandating such compliance.

We next consider the estate's contention that the probate court's adherence to its special duty to protect the interests of disabled persons' should guide our analysis of the court's ruling. Although the probate judge did not articulate that special duty as a basis for her action, "[a]s a reviewing court, we can sustain the decision of a lower court on any grounds which are called for by the record, regardless of whether the lower court relied on those grounds and regardless of whether the lower court's reasoning was correct." *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97, 658 N.E.2d 450, 457 (1995). What is before us on review is the circuit court's judgment, not the reasoning the court employed. *Kopley Group V., L.P.*, 376 Ill. App. 3d 1006, 1020, 876 N.E.2d 218, 230 (2007), citing *Canada Life Assurance Co. v. Salwan*, 353 Ill. App. 3d 74, 79, 817 N.E.2d 1021, 1026 (2004).

In the case *sub judice* support for the court's ruling derives from section 20-3 of the Probate Act of 1975 (Act), which grants the court the power to sell a ward's real estate under such terms as the court directs. 755 ILCS 5/20-3 (West 2008). In proceedings involving the sale of the estate's property, under section 20-9 of the Act the court is clearly vested with the power to "confirm the sale or disapprove the report and order the property to be resold." 755 ILCS 5/20-9 (West 2008). Essentially, that is what occurred in the proceedings below where the court expressly voided Perry's contract and allowed the property to be resold to the other party. The action taken by the court was clearly within the purview and scope of the Probate Act.

As we have acknowledged, an interpretation of Perry's contract under prevailing legal standards offers no basis for voiding the agreement. Although such standards might clearly resonate and perhaps be dispositive on the common law court's docket, compelling equitable principles support the court's ruling below. As often stated, "courts are under a duty to protect the interests of a minor or a disabled person who is party to the judicial proceedings before it." *Valdovinos v. Luna-Manalac Medical Center, Ltd.*, 328 Ill. App. 3d 255, 272, 764 N.E. 2d 1264, 1277 (2002). The need to protect the interest of a disabled person may not comport with traditional contract law interpretation, however, when equitable interests intervene, those interests supersede all else. "If there is a clash between a rule of equity and a rule of law, the former, of course, prevails." 7 J. Pomeroy, Modern American Law 215 (1914). Given these equitable considerations, we discern that in the case *sub judice* the probate court had an overriding duty to protect the disabled person's interests.

An unbroken line of precedent clearly supports the assertion that a probate court may

disapprove a sale and order a resale if that action will be in the best interest of estate in question. *Jennings v. Dunphy*, 174 Ill. 86, 89, 50 N.E. 1045, 1046 (1898). In *Jennings*, no contention was made that the conservator's proposed sale was anything but fair; the price was reasonable and there were no irregularities or suggestions of fraud. Nonetheless, our supreme court determined that the county court judge was vested with the power to order a resale because "it was the primary duty of the court to watch over and protect the interests of the party whose unfortunate disability had rendered necessary the appointment of a conservator and the sale of his property." *Jennings*, 174 Ill. at 91, 50 N.E. at 1046.

We are likewise mindful of ramifications of the Judicial Article of 1964 (Ill. Const. 1870, art. VI (amended 1964)), which expanded the jurisdiction of the probate court to hear all justiciable matters. Ill. Const. 1870, art. VI, § 9 (amended 1964); *Radice v. Antonacci*, 87 Ill. App. 2d 139, 142-43, 231 N.E.2d 107, 108 (1967). Through the Judicial Article, the limited jurisdiction of the probate court was " 'superseded by the unlimited original jurisdiction of the Circuit Court' " with the result that " '[p]lenary actions in the Equity Division of the Circuit Court for an accounting or for the adjudication of title to real estate are not now required. Such actions may proceed in the Probate Division of the Circuit Court.' " *Lescher v. Barker*, 57 Ill. App. 3d 776, 779, 373 N.E.2d 1007,1010 (1978), quoting *In re Estate of Garrett*, 81 Ill. App. 2d 141, 149-50, 224 N.E.2d 654, 659 (1967).

Moreover, section 20-6 of the Act vests probate courts with extensive and explicit powers over proceedings to sell or mortgage real estate in matters over which the court has general jurisdiction. 755 ILCS 5/20-6 (West 2008). Although the Judicial Article abolished the

distinction between the courts of law and equity, the probate court historically has been the repository of equitable powers. 7 J. Pomeroy, Modern American Law 140 (1914). This remains true today. "It is well settled that the probate court may give relief of an equitable nature when justice so requires." *Berber v. Hass*, 57 Ill. App. 2d 109, 113, 207 N.E.2d 96, 98 (1965). In the case *sub judice*, we perceive that the probate judge properly resolved the validity of the contract on equitable grounds. As the court noted in its ruling, it was "in the best interests of the alleged disabled person to net $130,000 as opposed to $80,000." We review that finding under the appropriate abuse of discretion standard.

In adherence to that standard, we are mindful " 'that gross inadequacy of price is not of itself sufficient to set aside a judicial sale, yet when such inadequacy is shown, coupled with slight circumstances indicating unfairness or fraud, either upon the part of the officer, the purchaser or the party to the record benefitted by the sale, it will be sufficient for equitable intervention.' " *Milner v. Denman*, 21 Ill. 2d 182, 190, 171 N.E.2d 654, 658 (1961), quoting *Rogers v. Barton*, 386 Ill. 244, 250, 53 N.E.2d 862, 865 (1944). Nonetheless, common sense has long dictated that consideration should be given to the adequacy of the price in the approval of judicial sales. *Rader v. Bussy*, 313 Ill. 226, 231-32, 145 N.E. 192, 194 (1924).

In *Clegg v. Christensen*, 346 Ill. 314, 178 N.E. 925 (1931), the price was not found to be grossly inadequate because the net gain to the estate between the first price and the resale offer was a difference of less than ten percent. *Clegg*, 346 Ill. at 321, 178 N.E. at 927. In contrast, in *McCallum v. Chicago Title & Trust Co.*, 203 Ill. 142, 67 N.E.2d 823 (1903), the property was sold for $705 and the resale would have been $950, resulting in a $400 loss to the minor's estate,

counting lost earnest money. *McCallum*, 203 Ill. at 143, 67 N.E. 2d at 823. In the instant case, the resale price for the estate's property was $139,000, well over the purchase price of $80,000 offered by Perry. If an increase of less than half as much as the original price was grossly inadequate, as in *McCallum*, the probate judge could surely conclude that the disparity reflected from the evidence is also grossly inadequate.

Moreover, where the contract price is grossly inadequate, slight circumstances indicating fraud or unfairness in the transaction may well suffice as a ground to set aside the sale. *Clegg*, 346 Ill. at 320, 178 N.E. at 927. Equity "will not suffer a wrong without a remedy" and the remedy to be enforced must suit the facts of the particular case in question. 7 J. Pomeroy, Modern American Law 213 (1914). In the proceedings below, the probate judge recognized that enforcement of Perry's contract would be tantamount to the conversion of $50,000 from the estate of a disabled person. Perry's conduct suggested more than merely a slight indication of fraud and unfairness. We find disquieting that shortly after Perry argued to the probate court that $80,000 was a fair price for a contract, he attempted to sell his interest to a third party for $139,000. This suggests that Perry, an attorney, was aware that $80,000 was a grossly inadequate price for the property. The probate judge could well surmise that the purchase for the price contemplated under Perry's contract, coupled with an immediate resale for a much higher amount, would be indicative of unfairness to the estate. Here, the equitable interests of the disabled person lead to the conclusion that the court did not abuse its discretion in denying Perry's motion to enforce his contract.

## CONCLUSION

1-09-0312

For the foregoing reasons , we affirm the judgment of the probate court denying the emergency motion and holding the real estate contract null and void under equitable principles.

Affirmed.

TULLY and FITZGERALD SMITH, JJ., concur.

REPORTER OF DECISIONS – ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each Case)

| Please Use Following Form: | |
|---|---|
| Complete TITLE of Case | DAMON D. PERRY,                                Interested Third Party-Appellant,<br><br>v.<br><br>THE ESTATE OF IRENE CARPENTER<br>A Disabled Person<br><br>                                Defendant-Appellee. |
| Docket No.<br><br>COURT<br><br><br>Opinion Filed | No. 1-09-0312<br>Appellate Court of Illinois<br>First District, FIFTH Division<br><br>November 13, 2009<br>(Give month, day and year) |
| JUSTICES | JUSTICE TOOMIN delivered the opinion of the court:<br><br>Tully and Fitzgerald Smith, JJ., .                                         concur [s]<br><br>                                                              dissent[s] |
| APPEAL from the Circuit Ct. of Cook County, Chancery Div. | Lower Court and Trial Judge(s) in form indicated in the margin:<br><br>The Honorable     Mary Ellen Coghlan,,  Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel.  Indicate the word NONE if not represented.<br><br>Attorneys for Defendant-Appellee:                Arlene Y. Coleman<br>                                                 A.Y. Coleman & Associates<br>                                                 70 East Lake Street, Suite 540<br>                                                 Chicago, IL 60601<br><br>Attorneys for Appellant:                         Damon D. Perry<br>                                                 5608 South Racine Avenue<br>                                                 Chicago, IL 60636 |