CHARLES BAMBERG, Plaintiff-Appellee, *v.* R. L. GRIFFIN, Defendant-Appellant.

Second District   No. 78-437

Opinion filed September 12, 1979.

Peter D. McClanathan, of Kroeger, Burt & McClanathan, of Freeport, for appellant.

Howard H. Prestwich, of Freeport, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Plaintiff was awarded judgment in the amount of $7,550 based upon defendant's check (payment on which was stopped) given as "earnest money" in connection with an agreement for the purchase of real estate. The defendant, who repudiated the agreement, appeals, claiming mistake and misrepresentation. He contends that the judgment amounts to a forfeiture on inequitable grounds; and that plaintiff would be entitled only to actual damages, which were not proved.

■■ The posture of this case is somewhat different from the ordinary

litigation against defaulting purchasers which seeks a forfeiture of money paid on installment contracts to purchase real estate. Here, plaintiff sued on a check after the drawee-bank refused to honor it, and the provisions of the Uniform Commercial Code must be considered. Although the payee of a check may qualify as a holder in due course (Ill. Rev. Stat. 1977, ch. 26, par. 3—302(2)), the payee's knowledge of the existence of a defense to the instrument would prevent him from acquiring this status. (Ill. Rev. Stat. 1977, ch. 26, par. 3—302(1).) The recited section requires that the holder take for value and in good faith as well as without notice of a defense. A holder takes the instrument for value "to the extent that the agreed consideration has been performed * * *" (Ill. Rev. Stat. 1977, ch. 26, par. 3—303(a)). The Uniform Commercial Code provides that when the signature on the instrument is established, as it is here, "production of the instrument entitles a holder to recover on it unless the defendant establishes a defense"; but if defendant establishes a defense the burden shifts to the holder to establish that he is a holder in due course. (Ill. Rev. Stat. 1977, ch. 26, par. 3—307(2).) The want or failure of consideration is a defense against any person not having the rights of a holder in due course with exceptions not here involved. (See Ill. Rev. Stat. 1977, ch. 26, par. 3—408.) Bamberg was not a holder in due course because the conveyance of the real estate which was the agreed consideration for the $7,550 check remained, at all times, executory (see Ill. Rev. Stat. 1977, ch. 26, par. 3—303(a); see also Ill. Ann. Stat., ch. 26, par. 3—303, Illinois Code Comment, at 155 (Smith-Hurd 1963)). Whether the defense of failure of consideration is available against Bamberg as a holder, although not one in due course, is then considered.

It is implicit in the judgment order that the trial judge must have found that the plaintiff's failure to convey the premises to the defendant was due to the defendant's repudiation of the contract on September 19, 1977, and that this was without excuse. In this appeal the defendant takes the position that the transaction was "tainted by mistake, misrepresentation, misunderstanding, and other irregularities" which would make it inequitable to permit the plaintiff to, in effect, forfeit the "earnest money," particularly when there was no proof that the plaintiff had suffered any actual damages nor that the defendant received any part of the consideration for the agreement. The evidence must therefore be reviewed to determine whether the judgment is against the manifest weight of the evidence.

On September 10, 1977, the plaintiff held a public auction of certain of his real estate which was conducted by auctioneer John Balbach. The defendant was the only one to make an offer. On September 10, the defendant signed a short "offer to purchase" which described property:

"Mr. & Mrs. Charles Bamberg property consisting of approx. 2.2 acres located in Sec. 13 Twp. 27 N Range 7 east of the 4th P.M. including all existing buildings & permanent fixtures"

for a purchase price of \$75,500, with "\$7550 as earnest money." In this connection defendant gave plaintiff a check for \$7550, also dated September 10, 1977. It appears from the record that Tract D consisting of .017 acres located to the south of the main property was included in the sale, although property both to the right and left and below Tract D, owned by the Bambergs, was not included. The controversy principally turns on questions of what representations were made as to the uses that can be made of Tract D.

Griffin testified to a number of conversations with the plaintiff during the negotiations for the sale. He said that he and Bamberg had several conversations with reference to Tract D; that he told Bamberg that it would make a difference in the price he would pay if he could place a mobile home on the small parcel and if he were able to sell the small tract separately. He said he indicated both to Bamberg and to Balbach that he was purchasing all the land in question for resale, and that he would like to place a trailer on Tract D but was concerned about zoning regulations. Griffin said that he stated these intentions to Mr. Bamberg on several occasions and was assured that a mobile home could be placed there; that, in fact, Bamberg had told him, possibly four times, that the zoning would allow a mobile home, that it was "easy to get it zoned"; but that when he checked with the zoning officer on Monday after signing the agreement on Saturday, he was told that Tract D was not large enough to qualify for a trailer use and that he thereupon stopped payment on his check. He further testified that both Bamberg and Balbach promised to hold his check until he had had the opportunity to check on the zoning.

Griffin's wife also testified to being present on two occasions when, she said, Bamberg told her and her husband that it would be possible to put a trailer on the property with the permission of the zoning officer and that Bamberg said he would have no problem getting the permission because he knew some members of the zoning commission.

Mr. Washburn, the zoning officer, testified that he had indicated to the defendant that Tract D had an area of only about 7500 square feet and that under the Stephenson County zoning ordinance it was necessary for a tract of land to consist of at least 20,000 square feet. Washburn also testified that there was an obstacle to taking land away from Tract C, which borders Tract D immediately to the north; for if 12,500 square feet were taken away from Tract C and added to Tract D in order to meet the county zoning requirements, Tract C would then be in violation of the plat act. (Ill. Rev. Stat. 1977, ch. 109.) Washburn testified that in his

judgment there would be no way that property lines could be readjusted in order to allow the placement of a trailer on Tract D unless the entire acreage was replatted.

The testimony of Bamberg, who was approximately 80 years old, is rambling and somewhat self-contradictory. Bamberg testified on cross-examination:

"Q. Did you ever talk about that parcel with Mr. Griffin?

A. That didn't go with the place but I give him that. It wouldn't be no good to me.

Q. Did he ever ask you about what capabilities that land had?

A. I'll tell you the truth, I did tell him that he could build a mobile home and that would take one part of the parcel to make it.

Q. I'm interested in what you said. What did you tell Mr. Griffin about the mobile home?

A. We surveyed the thing over and he could make one and he said I wanted to build one for myself he said.

Q. You discussed the fact of that possibility?

A. Yes.

Q. You told Mr. Griffin that a mobile home could be placed on the southerly parcel?

A. No.

Q. You did not tell him he could put a mobile home in?

A. Not unless he got a—I didn't do it myself because I had a talk with the surveyor, not surveyor but in the building or I mean in the tax office, and everything was in there. The man had something to say about it."

Later in his cross-examination, Bamberg testified:

"Q. Did Mr. Griffin ever suggest he would want to put a mobile home or trailer on the land?

A. No.

Q. You never discussed the possibility of putting a trailer on the property?

A. No.

Q. You never discussed zoning for putting a trailer on the property?

A. No."

However, in other examination, Bamberg stated:

"Q. You testified yesterday, Mr. Bamberg, that you walked the grounds with Mr. Griffin prior to the sale.

A. I think I said yes.

Q. As I recall the subject of putting a trailer on the property was brought up?

A. Never anything to me, so help me God.

Q. Isn't it your testimony that you told Mr. Griffin he could put a trailer on the property if he enlarged that southerly tract?

A. Yes, that is what they told me up here.

Q. When did you make that statement to Mr. Griffin?

A. When we went to Arizona and we didn't get a place."

And at another point the following appears of record:

"Q. * * * Are you saying here in court today that if additional land was added to that Tract D that a trailer could be placed on there so far as you know?

A. Yes.

Q. Is it not also true and are you saying that the property came from the north of Tract D that the trailer could be placed on it?

A. North and south and east."

Balbach testified that he did not hear any discussion between Bamberg and Griffin on September 10, 1977, relating to zoning. However, it appeared from his testimony that he was not present on several occasions before September 10, 1977, when, Griffin testified, he had the conversations about zoning with Bamberg.

■■ From this record the trial judge, based upon his view of the credibility of the witnesses, could have concluded that although Griffin may have indicated to Bamberg a desire to place the trailer on Tract D, that this was not a condition precedent to the transaction. The offer to purchase, which was accepted by the seller, contained no such condition and does not appear to be ambiguous. This would make resort to extrinsic evidence inadmissible to change its terms. (See *Spindler v. Krieger* (1958), 16 Ill. App. 2d 131, 139; *Heckmann v. Mid States Development Co.* (1965), 60 Ill. App. 2d 113, 119.) The parol evidence rule, of course, would not prevent Griffin's defending on the basis that he had a right to rescind because of either intentional statements amounting to actual fraud, or reckless statements constituting fraud, which he does not claim,[1] or on the basis of his claim that Bamberg, perhaps innocently, misrepresented the use which could be made of Tract D, resulting in a unilateral mistake in entering in the transaction on defendant's part. However, it would again appear that the trial judge could have believed Bamberg and Balbach and

---

[1] Even if fraud had been pleaded with specificity as required, Griffin would have been required to prove not only that Bamberg represented that zoning was assured in the future but that Bamberg had special knowledge, expertise and inside information upon which Griffin was induced to rely. (See *Zaborowski v. Hoffman Rosner Corp.* (1976), 43 Ill. App. 3d 21, 24.) However, a broader rule would apply with reference to statements or present or past conditions. See *Handelman v. Arquilla*, where specific performance as an equitable remedy was denied where material representations were made to induce another to purchase property and he did so in reliance upon them. The court held that it was immaterial whether the statements were made without knowledge of the truth or with an actual intent to deceive if they were, in fact, untrue material representations as to the condition of land. *Handelman v. Arquilla* (1951), 407 Ill. 552, 555.

therefore concluded that Bamberg indicated to the defendant nothing more than that Tract D could be used as a situs for a trailer if the tract were enlarged to include additional acreage.

Apparently aware of the difficulty of showing a failure of consideration Griffin on appeal has instead taken the position that, considering all of the circumstances, we should view the case as one of awarding a forfeiture when there is no forfeiture provision in the offer to purchase and when it is alleged that the plaintiff contributed to defendant's legitimate misunderstanding of the transaction.

The defendant cites the general and well-established rule that forfeitures of contracts are not looked upon with favor by courts. (See, e.g., *Hockenbury v. Lorentz* (1976), 35 Ill. App. 3d 983, 985.) He argues that the equitable remedy of forfeiture is akin to that of specific performance. Specific performance will not be granted unless a contract is " 'fairly and understandingly entered into, without any circumstances of misrepresentation, misapprehension or mistake which would make its enforcement oppressive or unjust.' " *Handelman v. Arquilla* (1951), 407 Ill. 552, 557.

■■ However, it has been long established in Illinois that the provision for earnest money in a contract, in the absence of an express provision to the contrary, will be interpreted as a provision for liquidated damages and enforced without actual proof of damages being required. Thus, in *Summers v. Hedenberg* (1916), 198 Ill. App. 460, 466-67, the court held that the phrase "earnest money" referred to money paid down for two purposes. First, if the contract were consummated, the "earnest money" would be applied to the purchase price; second, if the purchaser should default, the "earnest money" would be liquidated damages. The *Summers* court quoted with approval language from early English cases to the effect that if a purchaser repudiates a contract he then can have no right to recover the deposit; that the purchaser cannot insist on abandoning his contract and yet recover the deposit because that would enable him to take advantage of his own wrong.

In *Linster v. Regan* (1969), 108 Ill. App. 2d 459, 463, this court by way of dictum, stated:

> "If the parties to a contract have agreed upon a down payment, we believe that such sum should be accepted, unless otherwise provided, as the bargain of the parties for assurance to the seller that the buyer will perform. This, really, is the purpose and reason for a down payment with an offer."

In *Pruett v. La Salceda, Inc.* (1977), 45 Ill. App. 3d 243, 247, there was a contract for the purchase of a home which had no express provision for retention of earnest money by the seller upon buyer's default. The purchasers sought to recover earnest money even though they had

anticipatorily repudiated the contract. The opinion held that this could not be done, quoting with approval from *Linster*, and further stating:

> "Consequently in event of default by the buyer, such earnest money or down payment may be retained in full by the seller without reference to the amount of actual damages which may have resulted to the seller from the buyer's default."

See also Annot., 31 A.L.R.2d 8 (1953), and Later Case Service.

In *Hockenbury v. Lorentz*, cited by the defendant, the court referred to the fact that the traditional rule which denies restitution of a down payment to a defaulting purchaser without regard to actual damages was adopted "somewhat reluctantly" by the Illinois courts, but found it unnecessary to decide whether the traditional rule should be changed in view of its decision on other grounds. It should be noted that *Hockenbury* is further inapplicable on its facts. In *Hockenbury* the seller, during the time when the contract to convey was still in effect, disposed of part or all of the property to a third person. The court found this conduct to constitute a waiver. (35 Ill. App. 3d 983, 985.) Here, contrary to *Hockenbury*, there was no default by the seller nor a consequent attempt to recover a down payment by one not in position to make a conveyance if demand had been made by the purchaser. Since the liquidated damage provision here would come into play only upon a default by the purchaser, it would appear that there is no valid defense based on a failure of consideration or on the ordinary doctrines applicable to forfeiture.

■■ The fact that, because the defaulting purchaser stopped payment on the check this case comes to us in the posture of the seller seeking the recovery rather than the purchaser seeking recovery makes no essential difference. A defaulting purchaser who has no cause of action against the seller for the recovery of a down payment should also be precluded from raising failure of consideration as a defense if he caused the failure. The trial court's implicit finding that the repudiation of the contract by the purchaser was without legal authority is not against the manifest weight of the evidence in our view.

■■ ■ Defendant's further argument that the trial court improperly awarded a forfeiture because the land sale violated the Illinois plat act (Ill. Rev. Stat. 1977, ch. 109, par. 5) appears to be without merit. We find no provision in the statute that a land sale contract is invalidated if there are plat act violations. " ' "Where a bargain does not in terms necessarily involve a violation of law, the fact that plaintiff performs it in a way not allowed by law, does not preclude recovery, if not seriously injurious to the public order." ' " (*Meissner v. Caravello* (1955), 4 Ill. App. 2d 428, 431-32.) It should also be noted that section 5 of the plat act (Ill. Rev. Stat. 1977, ch. 109, par. 5) provides for a fine to be assessed against a person

convicted of selling or offering for sale land not platted as required by the act. This section of the act, establishing a quasi-criminal penalty for its violation, does not appear to contemplate that contracts to convey entered into in violation of section 5 are to be regarded as null and void for illegality. Moreover, it is not at all clear that the evidence sustains a finding that the contract was offered for sale in violation of the plat act.

For similar reasons we are also not persuaded by defendant's further argument that the result is inappropriate because Mr. Balbach, the auctioneer and real estate broker, allegedly contravened the rule of *Chicago Bar Association v. Quinlan & Tyson, Inc.* (1966), 34 Ill. 2d 116. It does not appear that Griffin was misled as to the binding effect of the "offer to purchase" form. See *Meissner v. Caravello* (1955), 4 Ill. App. 2d 428, 431-32.

Further, we are not persuaded by defendant's claim that the legal description of the property was insufficient for the claimed reason that it could not be ascertained which of the 2.2 of the 3.65 acres owned by the plaintiff were to be conveyed. The application for division of the property under the plat act contains information which provides with necessary certainty the property to be sold. In addition there was evidence that the parties walked the ground and agreed on the boundaries. See, *e.g., Ashline v. Verble* (1977), 55 Ill. App. 3d 282, 284.)

And finally, we are not persuaded by defendant's argument that plaintiff failed to demand performance of the contract before renting it and otherwise dealt with it prior to closing. We find *Hockenbury v. Lorentz,* (1976), 35 Ill. App. 3d 983, to be inapposite. The sole issue in *Hockenbury* was whether the nonbreaching party waived its right to declare a forfeiture by extending the time for performance. No rule was stated requiring a notice of intention to require performance in every case. Furthermore, here the defendant had unequivocally repudiated the contract whereas the purchaser in *Hockenbury* had stated an intent to continue the agreement in effect; and, further, the instant suit was not commenced until after the date set for the closing of the contract.

The judgment is affirmed.

Affirmed.

LINDBERG and WOODWARD, JJ., concur.