DAVID BARNES et al., Plaintiffs-Appellees, v. MARY BROWN, Defendant-Appellant.

Second District   No. 2—89—0291

Opinion filed January 25, 1990.

Michael C. Poper and Stephen M. Haugh, both of Michael C. Poper, P.C., of Crystal Lake, for appellant.

David Barnes, of Crystal Lake, appellee *pro se.*

JUSTICE INGLIS delivered the opinion of the court:

Plaintiffs, David and Valerie Barnes, executed a written real estate purchase contract on June 27, 1985. Plaintiffs (Buyers) agreed to purchase two properties on South Throop Street, Woodstock, Illinois, owned by defendant, Mary Brown (Seller). Ultimately, the transaction failed due to the inability of plaintiffs to obtain financing for the purchase, and plaintiffs brought suit against defendant to recover $4,700 of the $5,000 earnest money that plaintiffs had deposited with defendant.

The cause proceeded to a bench trial, and on October 12, 1988, the trial court entered judgment for plaintiffs pursuant to its memorandum opinion filed July 20, 1988. The trial court denied defendant's motion to reconsider in an order entered February 21, 1989, and pursuant to a supplemental memorandum of the trial court dated February 9, 1989.

Defendant timely appeals, contending that plaintiffs should forfeit their earnest money. We perceive defendant's arguments to be the following: (1) under the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 1 *et seq.*), plaintiffs were required to give written notice of their inability to obtain financing; (2) the contract, drafted by plaintiffs' attorney, should be strictly construed against plaintiffs, and plaintiffs' failure to give formal written notice should result in forfeiture where plaintiffs never divested themselves of the liability created by the contract; (3) since the language of the contract is ambiguous, and the contract should be construed against the drafter, the trial court misinterpreted the effect of the presumption contained in the financing contingency clause of the contract, and even if the presumption is rebuttable, there was no evidence that defendant had received actual notice which would tend to negate the presumption. We reject these three arguments, and we affirm.

The contract which is the subject of this dispute contained several provisions bearing on the issue of defendant's refusal to return plaintiffs' earnest money. The provisions state:

"CLOSING DATE: The closing date shall be on September 3, 1985, or on such other date as may be mutually agreed to by the parties, except as may be provided otherwise in this agreement.

\* \* \*

FINANCING: This contract is subject to the condition that PURCHASER be able to procure within sixty (60) days from the date of acceptance a loan to be secured by mortgage on the real estate in the amount of Two Hundred Twenty-Five Thousand and 00/100 dollars ($225,000.00), or such lesser sum as PURCHASER accepts, with interest not to exceed then current prime rate issued on such terms as are being granted pursuant to Avondale Federal Savings of Chicago Prime Mortgage lending program. If PURCHASER is unable to secure said commitment within the time specified and notifies SELLER within said sixty-day period, this contract shall become null and void and all earnest money shall be returned to PURCHASER. Unless PURCHASER notifies SELLER of PURCHASER'S failure to secure said commitment, then it shall be presumed that PURCHASER has secured said commitment and will complete the purchase of the real estate.

\* \* \*

DEFAULT: If this contract is terminated without PURCHASER'S fault, the earnest money shall be returned to PURCHASER; however, if termination is caused by PURCHASER'S fault, then at the option of SELLER, and upon thirty (30) days notice to PURCHASER, if the PURCHASER is not then able to fulfill the conditions of this contract, the earnest money shall be forfeited to the SELLER and applied first to the payment of SELLER'S expenses and the balance to be retained by SELLER as full and complete liquidated damages.

TIME: Time is of the essence of this agreement.

NOTICES: All notices required shall be in writing and shall be served on the parties at the addresses following their signatures. The mailing of notice by registered or certified mail, return receipt requested, shall be sufficient service. In addition to notice to PURCHASER, notice shall be given in the event of SELLER to BRUCE M. JANCOVIC, Attorney, 1000 W. Touhy Avenue, Park Ridge, Illinois 60068; and in the event of PURCHASER, to THOMAS ZANCK, Attorney, 40 Brink Street, Crystal Lake, Illinois 60014."

We summarize those facts pertinent to the issue of whether plaintiffs should be required to forfeit their earnest money. Both sides were represented by counsel, at least through the executory phase of the contract, and plaintiffs' attorney drafted the contract. The real estate purchase contract contained a 60-day financing contingency

clause for the benefit of plaintiffs. This clause provided that, if plaintiffs were unable to procure the appropriate financing commitment within the 60-day period and notified Seller within that period, the contract became null and void and the earnest money was to be returned to plaintiffs. However, if plaintiffs failed to notify the Seller of the failure to obtain financing, it would be presumed that the Buyers had secured financing and would complete the purchase.

Plaintiffs applied for financing at Avondale Federal Savings Bank of Chicago (Avondale). However, plaintiffs were unable to obtain the specified financing within the 60-day period, which expired on August 26, 1985. Specifically, Avondale denied plaintiffs' application for a loan in a letter dated September 23, 1985. Plaintiffs received the letter of denial on September 29, 1985, at which time David Barnes, upon returning from vacation, claims to have called the Seller to inform her of the denial and to find out what he could do about it. David claims that the Seller, Mary Brown, encouraged him to do what he could about the financing. Plaintiffs apparently never formally notified defendant in writing that financing was not available during the 60-day financing period.

David testified at trial that he had had several telephone conversations with defendant apprising her of the status of his loan application with Avondale. David testified that between August 20 and August 26, 1985, he had a conversation with defendant in which he advised her that he had not yet heard from Avondale regarding the financing. David also testified that there was no closing on September 3, 1985, the closing date specified in the contract, because he had not received a financing commitment. David said he had had similar conversations with defendant in early September prior to going on vacation on September 20. Defendant asked if she could contact Avondale herself in his absence to see what the outcome was, and David agreed that she could.

David also testified that, on or about October 25, 1985, defendant asked him to write her a new earnest money check because the first check was stale. The original check was dated March 13, 1985. David wrote her a new check at the end of October. David claims that, when he gave her the check, she reiterated that, if the deal fell through, she would return his $5,000.

On November 20, 1985, the Seller sent plaintiffs a notice of default demanding a closing within 30 days and threatening to retain the deposit in the event plaintiffs failed to close the transaction. The letter stated that defendant was still anxious to close. David later replied by ordinary mail stating that, subsequent to his December 1 con-

versation with defendant, David had spoken with a third party, Chuck Peterson, regarding Peterson's possible involvement and assistance with the transfer of the property to the Buyers. The letter implies that defendant had suggested Chuck Peterson as a possible third party to the transaction. The letter related that Peterson had no idea what defendant was talking about. David's letter also demanded the return of his earnest money.

Defendant testified that she had contacted David on July 16, 1985, and that David had indicated that everything looked good at that point and that an appraiser from Avondale would be contacting her soon. On August 15, Avondale's appraiser went through the Seller's buildings to obtain the necessary information to do the appraisal. Defendant stated that between June 27 and August 29, she had only one conversation with David, on July 16, and there was no further need to speak with him because she *knew* that there was nothing from Avondale as yet because the appraisal had not been completed. Defendant acknowledged that, between August 25 and September 3, she took no action to arrange for a title commitment for the September 3 closing, even though it is admittedly customary to secure the title once the purchaser had received something in writing from the financing agent.

Defendant testified that on September 10 David told her that everything "looked good," that the appraiser had already appraised the property but that David had not yet received anything at all in writing from Avondale, and that he was going on vacation. Defendant testified that David consented to having her call Avondale to find out the status of the financing and told her he would be back on September 30. Defendant testified that she called Avondale on September 26, but Avondale would not tell defendant the contents of its letter to plaintiffs. Defendant stated that, in her conversation with David on September 30, he told her that the bank had not turned him down.

Defendant claims that she next spoke to David by telephone from Florida on December 2, 1985. Defendant testified that David "said he wanted his earnest money back, and he told me specifically for the first time that Avondale had turned him down." Defendant testified that the following morning she called Avondale to confirm that plaintiff's application had been turned down. Defendant stated that "[t]his is the first time I knew the date that it was rejected."

The trial court ultimately found that, while the Buyers sent no written notice to the Seller regarding plaintiffs' inability to obtain the specified financing, the Seller was nonetheless aware that financing had not been obtained as of September 3, 1985, and was aware that

financing had not been obtained during the months of September and October. The trial court distinguished between rebuttable and conclusive presumptions and concluded that the evidence rebutted the presumption contained in the financing contingency clause of the contract. That clause stated that unless the purchaser notified seller of the purchaser's failure to secure the financing, it would be presumed that the purchaser had secured the commitment and would complete the purchase of the real estate. The trial court found no ambiguity in the contract provisions.

On appeal, defendant first contends that a written notice was required by the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 2) and the failure of Buyers to provide written notice to Seller requires forfeiture because an executory contract under the Statute of Frauds cannot be modified orally. Defendant did not effectively raise this argument in the trial court and, therefore, waives this issue on appeal. *Nugent v. Miller* (1983), 119 Ill. App. 3d 382, 387.

■ Even if defendant had properly raised it, the argument is without merit. A party may waive strict compliance with the written terms of a real estate contract by her conduct or words inconsistent with a claim afterwards asserted. (*Wysocki v. Bedrosian* (1984), 124 Ill. App. 3d 158, 166-67.) A party to a real estate contract can be estopped from raising the Statute of Frauds in an attempt to bar proof of an oral modification where the other party has detrimentally relied upon the waiver of strict compliance with the original written contract. *Nelson v. Estes* (1987), 154 Ill. App. 3d 937, 941.

■ Our careful review of the record discloses that defendant was aware that plaintiffs had not secured financing by August 26, 1985, and it appears that she was willing to consummate the transaction as late as December of that year, provided plaintiffs obtained financing. Defendant was well aware, even by August 26, 1985, that financing was not forthcoming without the completion of Avondale's appraisal, and she acknowledged that she did not complete the arrangements for title for the closing on September 3. There is ample evidence in her testimony that there was continued acquiescence in plaintiffs' delay in obtaining financing in September, October and part of November; that defendant went so far as to contact Avondale herself further evinces her knowledge of the lack of financing. Indeed, defendant obtained a new earnest money check from David which further shows her desire to complete the deal in spite of the financing problems. We find less than credible defendant's claim that she had no contact with plaintiffs between July 16 and September 10 when the closing was to have taken place on September 3. It seems highly implausible that defend-

ant would not have been interested in finding out whether plaintiffs had financing and whether plaintiffs would close on September 3. We conclude that defendant waived strict compliance with the time and notice provisions of the contract, at least insofar as they related to the financing contingency. Defendant's behavior strongly suggests that she knew all along that plaintiffs had not obtained financing.

■ Our conclusion that defendant waived strict compliance with the notice requirements necessarily affects our determination that there was evidence rebutting the presumption that plaintiffs had obtained financing and would complete the purchase. The contract specifies that the failure to notify defendant in writing of plaintiffs' inability to secure financing within the 60-day period would raise a presumption that the purchaser had secured "said commitment" and would complete the purchase of the real estate. Presumptions are generally classified as either rebuttable or conclusive (irrebuttable). (See Black's Law Dictionary 1067 (5th ed. 1979); R. Hunter, Trial Handbook for Illinois Lawyers (Civil) §§35.3, 35.4, at 469-70 (6th ed. 1989).) The law recognizes that irrebuttable or conclusive presumptions may not be rebutted because it would be contrary to public policy to do so. For example, there is an irrebuttable presumption that everyone knows the law. R. Hunter, Trial Handbook for Illinois Lawyers (Civil) §35.3, at 469 (6th ed. 1989).

Rebuttable presumptions, sometimes known as presumptions of fact, have the force of proof until overcome by contradictory evidence. (R. Hunter, Trial Handbook for Illinois Lawyers (Civil) §35.4, at 469-70 (6th ed. 1989).) Such presumptions are not evidence and cannot be weighed in the scale against evidence; they are never indulged in against established facts. As soon as evidence is produced which is contrary to the presumption which arose before the contrary proof was offered, the presumption vanishes entirely. (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 461.) The prevailing theory regarding presumptions that Illinois follows is Thayer's bursting bubble hypothesis: once evidence is introduced contrary to the presumption, the bubble bursts, and the presumption vanishes. (*Dean*, 95 Ill. 2d at 462.) It is consistent with the Thayer approach that the party contesting the presumption must come forward with evidence that is sufficient to support a finding of the nonexistence of the presumed fact. *Dean*, 95 Ill. 2d at 462-63.

■ The trial court, in the present case, found sufficient evidence that defendant had actual knowledge of plaintiffs' inability to obtain financing at least as early as September 3, 1985, the projected closing date, and defendant continued to be aware of the problem throughout

September and October. In view of our prior conclusion that defendant was aware that plaintiffs had not obtained financing prior to the September closing date, we agree with the trial court's finding that there was sufficient evidence to "burst the bubble" of the rebuttable presumption. Therefore, defendant could not presume that plaintiffs would actually go through with the transaction. Moreover, our examination of the record reveals that defendant was aware of the failure to obtain financing as early as August 26, 1985. Under the circumstances, we conclude that it was unnecessary for plaintiffs to give formal written notice of the failure to obtain financing.

■ We also conclude that the contract's financing contingency provisions are unambiguous. Therefore, defendant's argument that the contract should be construed strictly against plaintiffs as drafter of the document must fail. Where a contractual provision is unambiguous, no rules of construction need be applied, and the intent of the parties is determined from the language of the agreement itself. (*Shultz v. Delta-Rail Corp.* (1987), 156 Ill. App. 3d 1, 10.) Contracts are not rendered ambiguous merely because the parties do not agree on their proper construction. (*Shultz*, 156 Ill. App. 3d at 10.) Indeed, we agree with the trial court's observation that the forfeiture provision, in this case, must be strictly construed against the party seeking to enforce it. See *Allabastro v. Wheaton National Bank* (1979), 77 Ill. App. 3d 359, 364.

■ The scenario in this case involves two parties who, by their actions, attempted to save a real estate transaction destined to fail. It appears that defendant attempted to accommodate plaintiffs in their attempt to secure financing and relaxed the requirements of strict compliance with the time and notice provisions of the contract, at least with respect to the financing contingency clause. The record indicates that there were ongoing negotiations and continuing efforts by plaintiffs to obtain financing until relations broke down between the parties in early December 1985 when, long after the contingency provisions had expired, it became clear that plaintiffs could not perform. Under the circumstances, we find that forfeiture of the earnest money sought in plaintiffs' amended complaint would be inequitable.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

UNVERZAGT, P.J., and DUNN, J., concur.