# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Triple R Development, LLC v. Golfview Apartments I, L.P.*, 2012 IL App (4th) 100956

---

| | |
|---|---|
| Appellate Court Caption | TRIPLE R DEVELOPMENT, LLC, an Illinois Limited Liability Company; and COLLIERS BENNETT & KAHNWEILER, INC., an Illinois Corporation, Plaintiffs-Appellees, v. GOLFVIEW APARTMENTS I, L.P., an Illinois Limited Partnership, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-0956 |
| Filed | January 23, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action alleging that defendant defaulted on a real estate contract and that plaintiff was entitled to the deposit made by defendant, the trial court properly entered summary judgment for plaintiff and the escrow agent was ordered to pay the deposit to plaintiff along with interest from the date of deposit to the date of disbursal, since defendant failed to terminate the contract during the due diligence period and the contract provided that, in such circumstances, a portion of the deposit would be nonrefundable. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 10-MR-312; the Hon. Michael Q. Jones, Judge, presiding. |
| Judgment | Affirmed and remanded. |

Counsel on
Appeal

Michael D. Leroy and Richard F. Friedman (argued), both of Neal & Leroy, LLC, of Chicago, for appellant.

Jeffrey W. Tock (argued), of Harrington & Tock, of Champaign, for appellees.

Panel

JUSTICE COOK delivered the judgment of the court, with opinion.
Justice Steigmann concurred in the judgment and opinion.
Justice Pope dissented, with opinion.

## OPINION

¶ 1    On May 3, 2010, Triple R Development, LLC (Triple R), and Colliers, Bennett and Kahnweiler, Inc. (CB&K), filed a complaint against Golfview Apartments I, L.P. (Golfview), stating that Golfview had defaulted on a real estate contract, and Triple R was entitled to the $230,000 deposit made by Golfview. On August 4, 2010, Triple R filed a motion for summary judgment. On August 17, 2010, Golfview filed its answer and affirmative defenses and then on September 2, 2010, filed a countermotion for summary judgment. A hearing on Triple R's motion for summary judgment was held on September 27, 2010. On October 27, 2010, the court entered its order granting Triple R's motion for summary judgment. The court reserved the issue of attorney fees, set forth in count II of Triple R's complaint, but made a finding, pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), that there is no just reason to delay either enforcement or appeal. Golfview appeals. We affirm and remand.

¶ 2                                    I. BACKGROUND
¶ 3    The trial court determined there was no dispute as to the following facts. Triple R and Golfview entered into a contract on May 7, 2007, for the sale of real estate commonly known as Golfview Village Apartments, for $21 million. The closing on the sale was to occur within 150 business days of May 7, 2007. Pursuant to paragraph 4.A. of the contract, Golfview deposited $230,000 with CB&K, as escrow agent. An introductory clause in the contract recites that "Seller understands that Buyer intends to finance the acquisition and construction of said premises through the use of 1) tax exempt bonds issued by Illinois Housing Development Authority (IHDA) and/or the City of Rantoul, and 2) tax exempt bond credit enhancement financing." There is no dispute that Golfview did not obtain tax exempt bond and tax exempt bond credit financing.

¶ 4    The contract was for the purchase of approximately 76.62 acres containing 96 buildings

with rental apartments, for a purchase price of $21 million. The contract required Golfview to make a deposit of $230,000 upon the execution of the agreement. Under paragraph 5.A. of the contract, "[a]fter the expiration of the Due Diligence Review and the review period for the survey without termination by the Buyer, $230,000 of the deposit shall be non-refundable to Buyer except in the event of Seller's default." Under paragraph 14, Golfview had 30 days to perform its due diligence review after Triple R delivered certain items, which Triple R was obligated to do within 20 or 30 business days after the date of the contract. Paragraph 5.A. gave Golfview the power to direct the return of the deposit "provided such direction is given" during the 30-day due diligence review. In its verified answer to the complaint, Golfview admitted "that it did not terminate the Contract during the due diligence period; however the contract automatically terminated upon the Closing date set forth in the Contract because [Golfview] had not determined its eligibility to receive tax credits for the Premises."

¶ 5        Paragraph 10.F. of the contract and the concluding paragraph of paragraph 10 provided as follows:

> "Buyer will not be obligated to consummate the transaction unless and until:
>
> * * *
>
> (iii) Buyer has determined its eligibility to receive tax credits for the Premises.
> ***
>
> If any of the above requirements to Closing are not satisfied as of Closing, this Agreement shall automatically terminate on the Closing date and the Earnest Money, together with all interest earned thereon, shall be refunded to Buyer and the parties shall have no further liability to each other, except for such obligations as expressly survive termination under this Agreement, unless Buyer waives the unsatisfied items."

The closing date was set out in paragraph 3:

> "Closing. If Seller shall have complied with all of its obligations contained herein, and Buyer has not otherwise terminated this Contract pursuant to the terms hereof and the Buyer obtains the financing and/or government approvals set forth in this Contract, then the purchase and sale contemplated herein shall close (the 'Closing') at the office of the Title Company within one hundred and fifty (150) business days from the date of this Contract."

Paragraph 5.A. added that "in the event closing does not occur within the time specified under Section 3 through no fault of Buyer," Buyer could obtain a 30-day extension by depositing "$100,000 as additional earnest money," and a second and final 30-day extension by depositing "an additional $100,000 earnest money."

¶ 6                                    II. ANALYSIS

¶ 7        Summary judgment is proper only where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that no genuine issue as to any material fact exists and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008). A circuit court's entry of summary judgment is subject to *de novo* review.

-3-

*Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556, 866 N.E.2d 149, 153 (2007). It is sometimes more difficult for a plaintiff to prevail on a motion for summary judgment than it is for a defendant. Where a plaintiff has moved for summary judgment, the materials relied upon must establish the validity of the plaintiff's factual position on *all* the contested elements of the cause of action. *General Motors Corp. v. Douglass*, 206 Ill. App. 3d 881, 885, 565 N.E.2d 93, 96 (1990) (citing 4 Richard A. Michael, Illinois Practice § 38.5, at 229 (1989) (Civil Procedure Before Trial)). The issue in this case, however, is raised by defendant as an affirmative defense. "Contract construction and interpretation are generally well suited to disposition by summary judgment." *William Blair & Co. v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 334, 830 N.E.2d 760, 769 (2005).

¶ 8 Golfview attached the affidavit of Vince Lane, a consultant it had hired to manage and arrange financing for the project, to its response to Triple R's motion for summary judgment. Lane stated that closing "was conditioned upon [Golfview] obtaining tax exempt bond and credit financing, which was codified in the Recital Section and Section 10(F)(iii) of the Agreement." The trial court was critical of the Lane affidavit. "Mr. Lane states in his Affidavit that [Golfview] was not able to obtain 'tax exempt bond and credit financing,' but he is silent as to whether or not [Golfview] had, prior to Closing, 'determined its eligibility to receive tax credits for the Premises' as stated in paragraph 10.F."

¶ 9 The Internal Revenue Code provides for a "low-income housing credit" calculated in part by determining the building's "eligible basis." 26 U.S.C. § 42(d) (2006). "Eligible basis" for an existing building is determined in part, for example, by determining if the building was purchased, has been out of service for at least 10 years, and was not previously placed in service by the taxpayer or a relative. 26 U.S.C. § 42(d)(2) (2006). Eligibility for tax credits does not mean, however, that the tax credits will be received. Eligible premises would actually receive tax credits only if selected by the Illinois Housing Development Authority. 26 U.S.C. § 42(m) (2006).

¶ 10 The affidavit of Alan Nudo, member and manager of Triple R, stated that he had received an appraisal from Lane. The appraisal was prepared by Appraisal Research Counselors. Nudo's affidavit attached pages 95 to 102 of that appraisal. Page 102 stated the "value of low income housing tax credits" to be $9,100,000. Page 99 set out the tax credit calculations, stating "We have made no independent verification of the eligible basis provided–we assume the basis quoted to be correct. The estimated tax credit percentage and value per $1 were taken from the developer's [Golfview's] pro forma." Page 100 stated, "Reportedly, a sale of the tax credits is being negotiated with Century Pacific. The price has not yet been finalized; however, it was estimated at $9,073,521, or $0.90 per tax credit dollar, by the developer." "Based on the survey data, we have concluded the developer's figure of $0.90 per tax credit dollar to be reasonable. This results in an estimated value of $9,073,521. This figure, rounded, totals $9,100,000."

¶ 11 Golfview argues that the contract automatically terminated on the closing date set forth in paragraph 3, because Golfview had not "determined its eligibility to receive tax credits" as required by paragraph 10.F. Golfview quotes the concluding language of paragraph 10: "If any of the above requirements to Closing are not satisfied as of Closing, the Agreement shall automatically terminate on the Closing date and the Earnest Money, together with all

interest earned thereon, shall be refunded to Buyer and the parties shall have no further liability to each other \*\*\*." Interestingly, Golfview does not set out the language which immediately follows: "except for such obligations as expressly survive termination under this Agreement." Paragraph 5.A. contains such an exception: "After the expiration of the Due Diligence Review and the review period for the survey without termination by the Buyer, $230,000 of the Deposit shall be non-refundable to Buyer except in the event of *Seller's* default." (Emphasis added.) The *buyer's* default here did not justify a refund of the deposit. A down payment in a contract for the sale of real estate is recognized as an assurance to the seller that the buyer will perform. *Bamberg v. Griffin*, 76 Ill. App. 3d 138, 144, 394 N.E.2d 910, 915 (1979). Even if the buyer is relatively blameless, the seller may incur expenses if the deal falls through. This was a big project, involving 96 buildings with rental apartments. Triple R was obligated to produce a number of items, including a survey, copies of utility bills, tax bills, leases, service contracts, a complicated "rent roll," and a title insurance commitment. Golfview admits that it did not terminate the contract during the due diligence period.

¶ 12 The trial court did not reach the question whether paragraph 5.A.'s provision that the deposit was nonrefundable to Buyer after the expiration of the due diligence period fit in the category of "such obligations as expressly survive termination under this Agreement." Instead, the court determined that Golfview had in fact "determined its eligibility to receive tax credits" and therefore was compelled to close on the purchase of the premises under paragraph 10.F. The Appraisal Research Counselors appraisal relied on the information supplied by Golfview as to its eligibility to receive tax credits. Not only did Golfview supply that information to Appraisal Research Counselors, Golfview began negotiations for the sale of those credits. Golfview did not file any counteraffidavit disputing the fact that it had determined its eligibility to receive tax credits. While the movant always has the burden of persuasion on a motion for summary judgment, the burden of production can shift to the nonmovant. Once the movant has met its initial burden of production, the burden shifts to the nonmovant. At this point, the nonmovant cannot rest on its pleadings to raise genuine issues of material fact. *Helfers-Beitz v. Degelman*, 406 Ill. App. 3d 264, 267-68, 939 N.E.2d 1087, 1091 (2010). The trial court properly concluded that Golfview had "determined its eligibility to receive tax credits."

¶ 13 Golfview argues that "Mr. Nudo's affidavit did not name the author of the appraisal, the purpose for which it was prepared, for whom it was prepared or even the date that the appraisal was prepared." Golfview also argues that the appraisal excerpt was hearsay and should not have been admitted. The trial court did not rule on these objections because they were not made in the trial court. See *Cordeck Sales, Inc. v. Construction Systems, Inc.*, 382 Ill. App. 3d 334, 383, 887 N.E.2d 474, 521 (2008) (sufficiency of affidavits cannot be tested for the first time on appeal). Nudo's affidavit states that he received the appraisal from Lane, whom Golfview admits was its consultant whom it had hired to manage and arrange financing for Golfview Apartments. It is inconsistent for Golfview to deny the validity of the appraisal and then argue that "Both the appraisal and the pro forma were valuation exercises based on the *assumption* that such tax credits would be available. This assumption was appropriate since the availability of such financing was central to Defendant's ability to

complete the transaction." (Emphasis in original.) Golfview has not submitted any affidavits denying that it employed Appraisal Research Counselors to make an appraisal, denying that it supplied Appraisal Research Counselors with a *pro forma*, denying that it determined its eligibility to receive tax credits, or denying that it entered into negotiations with Century Pacific. All those matters were particularly within the knowledge of Golfview. Triple R introduced sufficient evidence so that Golfview was required to respond or accept the facts set out in Triple R's affidavit as true. *Purtill v. Hess*, 111 Ill. 2d 229, 240-41, 489 N.E.2d 867, 871-72 (1986).

¶ 14    The argument is made that the trial court's finding that the "parties did not bind themselves [under paragraph 3] to consummate the transaction if [Golfview] was not able to obtain tax exempt bond and tax exempt bond credit enhancement *financing*" (emphasis added) is inconsistent with its finding that the "parties did bind themselves pursuant to paragraph 10.F. of the Contract whereby [Golfview] would consummate the transaction if [Golfview] determined prior to Closing its *eligibility* to receive tax credits" (emphasis added). We disagree. Paragraph 3 provides a method for determining the closing date "if" certain events have occurred; paragraph 10.F. spells out when Golfview is "obligated" to consummate the transaction. The two paragraphs are alternatives; occurrence of the events spelled out in either paragraph would require Golfview to consummate the transaction. As the trial court found, "Paragraph 3 and paragraph 10.F. are not the same and they do not conflict with each other."

¶ 15    An earnest money deposit in a real estate transaction is designed to protect the seller. It provides assurance to the seller that the buyer will perform and not walk away from the contract. *Bamberg*, 76 Ill. App. 3d at 144, 394 N.E.2d at 915. What is the purpose of a deposit if it is returned to the buyer whenever the buyer chooses not to proceed? Sometimes the parties do make their contract dependent on financing. Financing contingency clauses are common in real estate contracts. See, *e.g.*, *Barnes v. Brown*, 193 Ill. App. 3d 604, 607, 550 N.E.2d 34, 36 (1990). No such language appears in this contract. Instead, the parties made the contract contingent on a determination of eligibility under the Internal Revenue Code, 26 U.S.C. § 42(d)(2). Forfeitures of contracts are not favored, and a party will be relieved from a technical forfeiture if an injustice would result. *Denis F. McKenna Co. v. Smith*, 302 Ill. App. 3d 28, 32, 704 N.E.2d 826, 830 (1998). There was more than a technical forfeiture here. This was a major project where the buyer was required to make prompt decisions, not wait until the last minute. The intent of the parties was clearly set out in paragraph 5.A.: "After the expiration of the Due Diligence Review *** without termination by the Buyer, $230,000 of the Deposit shall be non-refundable to Buyer except in the event of Seller's default." Paragraph 10.F. did entitle Golfview to a refund if it was unable to determine its eligibility to receive tax credits, but there is a difference between the words "eligible" and "obtained." Golfview was eligible for tax credits under 26 U.S.C. § 42(d), and the trial court properly found there was no genuine issue as to the fact that Golfview had determined that eligibility prior to June 7, 2007, the date of the Appraisal Research Counselors appraisal.

¶ 16    In response to the dissenting opinion, "A plaintiff may carry his burden of production with respect to affirmative defenses in the way a movant that does not have the burden of proof at trial may." 4 Richard A. Michael, Illinois Practice § 40.3, at 381 n.7 (2d ed. 2011)

(Civil Procedure Before Trial volume, discussing the effect on the burdens of persuasion and production). An affirmative defense basically confesses the plaintiff's case but asserts a new matter that avoids liability. The only contested issue is the affirmative defense; the elements of the cause of action are no longer contested. Whether the movant is the plaintiff or the defendant, the burden of production may shift to the party opposing a motion for summary judgment. Michael, *supra*, § 40.3, at 381. Once the movant produces evidence that, if uncontradicted, would entitle it to a directed verdict at trial, the burden of production shifts to the party opposing the motion. The nonmovant may not simply rely on his pleadings to raise issues of material fact. *Larson v. Decatur Memorial Hospital*, 236 Ill. App. 3d 796, 801, 602 N.E.2d 864, 868 (1992). Nor is mere argument enough to raise an issue of material fact. *Larson*, 236 Ill. App. 3d at 801, 602 N.E.2d at 868. Triple R introduced persuasive evidence here, evidence that Golfview's *pro forma* acknowledged a determination of its eligibility and that Golfview had entered into negotiations for the sale of tax credits. If that evidence were presented at trial, and Golfview failed to present evidence to contradict it, Triple R would be entitled to a directed verdict. Golfview's failure to file a counteraffidavit warranted summary judgment in this case.

¶ 17                                       III. CONCLUSION

¶ 18      For the reasons stated, we affirm the trial court's granting of summary judgment ordering CG&K to pay to Triple R the entire deposit of $230,000, plus any and all interest accrued thereon from the date of deposit to the date of disbursal. We remand for consideration of the attorney fees issue reserved by the court.

¶ 19      Affirmed and remanded.

¶ 20      JUSTICE POPE, dissenting:

¶ 21      I respectfully dissent from the majority's decision.

¶ 22      As our supreme court has made clear, summary judgment is a drastic means of disposing of litigation. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163, 862 N.E.2d 985, 991 (2007). For summary judgment to be appropriate, the movant's right must be clear and free from doubt. *Bagent*, 224 Ill. 2d at 163, 862 N.E.2d at 991.

¶ 23      When a trial court rules on a motion for summary judgment or an appellate court reviews a trial court's decision, the courts must remember the party moving for summary judgment is the burdened party (see *North American Insurance Co. v. Kemper National Insurance Co.*, 325 Ill. App. 3d 477, 482, 758 N.E.2d 856, 860 (2001)), and the moving party must meet both the initial burden of production and the ultimate burden of proof. See *Pecora v. County of Cook*, 323 Ill. App. 3d 917, 933, 752 N.E.2d 532, 545 (2001); *Wortel v. Somerset Industries, Inc.*, 331 Ill. App. 3d 895, 900, 770 N.E.2d 1211, 1214 (2002); *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 688-89, 737 N.E.2d 662, 668 (2000); see also Barbara A. McDonald, *The Top 10 Ways to Avoid Losing a Motion for Summary Judgment*, 92 Ill. B.J. 128, 128-29 (2004).

"If the movant has the burden of proof at trial, the movant must produce affirmative evidence that, if uncontradicted, would justify a directed verdict at trial to carry the original burden of production on the motion. [*Webber v. Armstrong World Industries, Inc.*, 235 Ill. App. 3d 790, 601 N.E.2d 286 (1992); *Venus v. O'Hara*, 127 Ill. App. 3d 19, 29, 468 N.E.2d 405, 411 (1984).] Because the party with the burden of proof at trial will normally be the plaintiff, if the plaintiff is the movant, the affirmative evidence must cover all essential elements of the cause of action not admitted in the pleadings [citations] *and any affirmative defense raised by the defendant*. [Citation.]" (Emphasis added.) 4 Richard A. Michael, Illinois Practice § 40.3, at 380-81 (2d ed. 2011) (Civil Procedure Before Trial volume, discussing effect of the burdens of persuasion and production).

Judge McDonald explained this further in her article, *The Top 10 Ways to Avoid Losing a Motion for Summary Judgment*, stating "[w]hen a plaintiff files a summary judgment motion on her complaint, she meets her initial burden by presenting evidence which, as a matter of law, establishes each element of her claim, as well as negates, or demonstrates the defendant's inability to prove an element of any affirmative defense. [*West Suburban Mass Transit District v. Consolidated R. Corp.*, 210 Ill. App. 3d 484, 488, 569 N.E.2d 187, 190 (1991).]" See McDonald, *supra*, at 130.

¶ 24    The majority ignores the plaintiffs' burden with regard to Golfview's first affirmative defense in this case. In its affirmative defense, Golfview alleged it was not obligated to consummate the contract by the closing date because it had not determined its eligibility to receive tax credits for the premises. According to Golfview: "The determination of [Golfview's] eligibility to receive tax credits was a condition precedent to closing and the condition was not met[;] therefore the Agreement automatically terminated on the Closing Date and the Earnest Money, together with all interest earned, should have been refunded to [Golfview] with no further liability." Plaintiffs did not meet their initial burden of production in this case. Plaintiffs did not present evidence demonstrating as a matter of law Golfview was unable to prove an element of its affirmative defense. In addition, plaintiffs did not present evidence negating as a matter of law that same affirmative defense. In this case, the record does not clearly establish Golfview made an eligibility determination.

¶ 25    The majority cites the First District Appellate Court's opinion in *General Motors Corp. v. Douglass*, 206 Ill. App. 3d 881, 885, 565 N.E.2d 93, 96 (1990), which relied on section 38.5 of Professor Michael's treatise, Civil Procedure Before Trial (see 4 Richard A. Michael, Illinois Practice § 38.5, at 229 (1989)), as authority for what a plaintiff moving for summary judgment has to establish before summary judgment can be awarded. Interestingly, the most recent version of section 38.5 of Professor Michael's treatise states:

"The movant must analyze all the issues raised by the pleadings, and ensure that the materials relied on in the motion establish the truth of all the factual issues on which the movant must prevail in order to be entitled to judgment or at least, the nonmovant cannot prove those issues on which he or she has the burden of proof. Accordingly, if the movant is a plaintiff, the materials relied on must establish the validity of the plaintiff's factual position on all the contested essential elements of the cause of action, *and on all affirmative defenses raised by the defendant either that they are not true or the defendant*

-8-

*cannot prove them.*" (Emphasis added.) 4 Richard A. Michael, Illinois Practice § 38.5, at 320 (2d ed. 2011) (Civil Procedure Before Trial volume, discussing the procedure and operation of motions for summary judgment).

As stated previously, plaintiffs did not present evidence negating Golfview's affirmative defense as a matter of law. Further, plaintiffs did not present evidence establishing as a matter of law Golfview's inability to prove an element of its affirmative defense. As a result, the burden of production never shifted to Golfview with regard to plaintiffs' motion for summary judgment. In other words, based on the record in this case, Golfview did not have to present any affidavits or other information declaring it had not made an eligibility determination to survive summary judgment.

¶ 26 According to the majority, the trial court

"*determined* that Golfview had in fact 'determined its eligibility to receive tax credits' and therefore was compelled to close on the purchase of the premises under paragraph 10.F. The Appraisal Research Counselors appraisal relied on the information supplied by Golfview as to its eligibility to receive tax credits. Not only did Golfview supply that information to Appraisal Research Counselors, Golfview began negotiations for the sale of those credits. *** The trial court properly *concluded* that Golfview had 'determined its eligibility to receive tax credits.' " (Emphases added.) *Supra* ¶ 12.

The majority's choice of the words "determined" and "concluded" describe exactly what the trial court did with regard to this case. The trial court acted as a trier of fact and made a factual determination that Golfview must have made an eligibility determination based on its assessment of the evidence in the record. However, nothing in the record, neither the appraisal nor any affidavit, establishes as a matter of law that Golfview made an eligibility determination.

¶ 27 Finally, I note the majority, while discussing its interpretation of the meaning of the contract in this case and the general purpose for deposits in real estate contracts, ignores an important concession made by plaintiffs' counsel. At oral argument, plaintiffs' counsel conceded Golfview would be entitled to the return of its deposit pursuant to paragraph 10.F.(iii) if it determined it was not eligible for tax credits on the premises.

¶ 28 Accordingly, for the reasons stated above, I respectfully dissent.

-9-